878 So.2d 798 (2004)
STATE of Louisiana
v.
Mirodello ASHFORD.
No. 2003-KA-1691.
Court of Appeal of Louisiana, Fourth Circuit.
June 16, 2004.
Rehearing Denied June 30, 2004.
*799 Eddie J. Jordan, Jr., District Attorney, Nick Orechwa, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO JR.).
DAVID S. GORBATY, Judge.
On July 18, 2002 the State filed a bill of information charging the defendant-appellant Mirodello Ashford with two counts of violating La. R.S. 14:64 relative to armed robbery. The defendant was arraigned and entered a not guilty plea to both counts on July 31, 2002. The pretrial motion hearing was held on August 14, 2002, at which time the court denied the defendant's motions to suppress. On January 14, 2003 the defendant appeared for trial, at which time a twelve-person jury was selected. The trial was recessed and then concluded on January 16, 2003, when the jury returned verdicts of guilty as charged on both counts. On January 24, 2003, the State filed a multiple bill of information charging that the defendant was a third offender. The hearing began on April 30, 2003 and was then recessed. On May 14, 2003, the court found the defendant to be a third offender as to count one. The court sentenced the defendant to one hundred and ninety-eight years on count one and ninety-nine years on count two. Both sentences are at hard labor and to be served without the benefit of probation, parole, or suspension of sentence, to run concurrently with each other.
On May 21, 2003, counsel appeared and filed a motion to reconsider sentence, which was denied, and motions to withdraw and for appeal, which were granted. The court appointed the Louisiana Appellate Project to represent the appellant. After the record was lodged, upon motion of appellate counsel, the record was supplemented with the transcript of the motion hearing held on August 14, 2003. On March 31, 2004, pursuant to an order of this Court remanding the matter, the trial court denied the motion for post judgment verdict of acquittal.

*800 STATEMENT OF THE FACTS

On July 3, 2003 at approximately 9: 15 p.m., Quiana Henderson and Rachell Collins left Ms. Henderson's home at 3301 LaSalle Street. As Ms. Henderson was locking the gate, Ms. Collins saw two people walking on the street. The first one passed by them and made some type of joke. The second man, whom she later identified as the defendant, was on the opposite side of the street and made eye contact with her. Then, Ms. Henderson walked around the house to put garbage into the dumpster in the parking lot, while Ms. Collins opened the trunk of her vehicle to retrieve a CD player which Ms. Henderson had asked her to get. Suddenly, Ms. Collins heard someone say, "Bitch, give me your purse." She realized that the man speaking to her was the same one who had been walking on the opposite side of the street. At first, she told him he must be kidding and to go about his business, but then she saw that he had a weapon. Believing she was about to die, she gave the defendant her purse and keys. She then lay on the ground at his direction.
Quiana Henderson returned from dumping the trash and saw her friend on the ground, but could not see anyone else because the trunk lid was raised. She heard a man saying, "Bitch, give me your purse and your keys, and get on the ground." She did not do anything at first because of her shock. The defendant then came out from behind the trunk, and she complied with his orders after he threatened to blow her brains out. As both victims were on the ground, the robber went to Ms. Collins' car and tried to open the door, but the alarm went off. He came back to them, threw the keys down, pointed the gun at Ms. Henderson's head, and demanded that Ms. Collins turn the alarm off or he would blow Ms. Henderson's brains out. After Ms. Collins showed the defendant how do turn the alarm off by pressing the button on the key, he went back to the car, threw the women's purses inside, and prepared to drive off. However, he did not do so immediately because there was a police unit on the corner of Washington and LaSalle handling a traffic matter. After a few minutes, the defendant left in Ms. Collins' vehicle.
After the defendant left the scene, Ms. Henderson jumped up and ran to the corner. There she informed the police officer that she and her friend had just been robbed. She told the officer about the car, which was a white 1997 Achieva with tinted windows and a Texas license plate, and gave a brief description of the robber. The clothing description consisted of a baseball cap and a printed shirt. She further described the perpetrator as a black male in his thirties. A short time later the police informed Ms. Henderson and Ms. Collins that the car had been located and that they were going to be transported to that scene for a possible identification of the robber. The women were taken to the location where the car had been found. There, they were asked separately to view two men standing on the corner. They both identified the defendant as the person who robbed them. The identifications were repeated in court, with the additional fact that at trial the defendant had facial hair, but he did not at the time of the robbery.
In addition to the trial testimony of the two victims, the State presented testimony from police officers involved in the case. Officer Ashanta Franklin testified that she was working in the Sixth District on July 3, 2002 with her partner, Officer Tommy Felix. They had just completed a traffic stop when two women came running up and said that they had just been robbed. The victims were very upset and hysterical. *801 Officer Franklin calmed them down and obtained a description of the car that the perpetrator had taken. Within seconds of the victims' report of the robbery, Officer Franklin was able to broadcast the description of the vehicle. Within two or three minutes, a response came back that the vehicle had been located. Officer Franklin stayed with the victims while Officer Felix went to the scene of the apprehension of the suspect. A detective then came back and picked them up so that the victims could view the suspect. Officer Franklin confirmed that the defendant was the person who was identified by both victims.
Officer Marcell Mejia testified that he was a Sixth District officer on July 3, 2002. On that date, he heard the dispatch from Officers Franklin and Felix regarding the armed robbery that had just occurred in the area of Washington and LaSalle. At the time, he was on a routine patrol on LaSalle Street near Third Street. He drove in the direction of Washington Avenue, but instead of staying on LaSalle, he turned onto a smaller street because, in his experience, that is what a suspect would do. When Officer Mejia was between Danneel and Third Streets, he saw a white car matching the broadcasted description, including that the vehicle had a Texas license plate. Officer Mejia activated his lights and tried to stop the vehicle. The driver, who Officer Mejia identified as the defendant, pulled over as if he was going to stop; Officer Mejia pulled his unit over but did not immediately exit his car. At that point, the defendant drove off at a high rate of speed. A chase ensued for about three blocks, ending when the defendant hit a curb and disabled the vehicle. Other officers responded to the scene, and the defendant was forcibly removed through the driver's side window when he failed to comply with orders to exit the vehicle. Immediately after he was removed from the car, Officer Mejia observed a weapon on the front seat. He also saw two purses on the floorboard. The defendant was wearing a baseball cap at the time he was removed from the vehicle.
Detective Ray Jones testified that he was assigned as a Sixth District robbery detective and set up the on-scene identification of the defendant by the victims. Detective Jones stated that he stood next to the defendant while another officer, Detective James, transported the victims to First and Danneel Streets. Detective James individually took the victims over to Detective Jones and the defendant; each victim identified the defendant as the man who had robbed her minutes before. Detective Jones also viewed the scene of the defendant's capture. He observed the vehicle, a hat next to it on the ground, a gun on the seat, and the victims' property inside the vehicle. He also testified that currency was seized from the defendant's pocket, although it was another officer who searched the defendant. Detective Jones further stated that approximately ten minutes elapsed between the time he arrived on the scene and the victims arrived for the identification procedure.
The defense presented two witnesses at trial. William Stills, Jr. testified that the defendant and he worked together. On July 3rd, they had picked up some lumber for a job and then went to a meeting of a second-line club to which Mr. Stills belonged. The club meeting was held at a home on Apple and Monroe Streets. The meeting ended at around 9:15 p.m.; Mr. Stills then drove the defendant to the home of Beverly Childs behind the Greater St. Stephens Church in the area of Loyola and Philip Streets. He estimated that he dropped the defendant off at around 9:30 p.m.
*802 Beverly Childs was the second defense witness. She stated that she lived at 2304 Loyola Avenue. She testified that she saw the defendant with William Stills at approximately 7:00 when she was getting off work and was walking down Washington Street to LaSalle. The defendant and Stills stopped and spoke with her. The defendant said he was on his way to the Essence Fest. After some discussion about the time of the last show, the defendant and Stills left, and she went home. She next saw the defendant between 9:00 and 9:15 p.m. when he came to her house. Ms. Childs stated that the defendant stayed at her residence until the news came on at 10:00 p.m. The defendant left to get food at a place called the Purple Rain, which was approximately five blocks from her home. She testified that the intersection of Philip and Danneel Streets was approximately two blocks from her home, and that the defendant would have passed that intersection to get to the Purple Rain. Ms. Childs did not see the defendant again.
The defendant did not testify at trial.

ERRORS PATENT
A review of the record for errors patent reveals one. The record when lodged did not reflect that the trial court ruled on the motion for post-judgment verdict of acquittal, an omission which was noted by the appellant pro se in a supplement to his brief. On March 18, 2004, this Court remanded this matter to the trial court to rule on the motion if the court had not already done so. On March 31, 2004 the trial court denied the motion.
La.C.Cr.P. art. 873 provides as follows:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
La.C.Cr.P. art. 821(A) provides that "[a] motion for post verdict judgment of acquittal must be made and disposed of before sentence." Although the trial court has now acted on the motion, it did not do so prior to the sentencing held on May 14, 2003. Furthermore, appellate counsel has assigned as error the excessiveness of the sentences. Therefore, the sentences must be vacated, and the case remanded for resentencing.
No other errors patent are noted.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1 & PRO SE ASSIGNMENT NUMBER 4
In the first assignment of error raised by counsel, and the fourth error assigned by the appellant in his pro se brief, they argue that the trial court erred in denying the motion to suppress the identifications which occurred one-on-one. Citing State v. Haynes, XXXX-XXXX (La.App. 4 Cir. 4/30/03), 847 So.2d 653, this Court in State v. Ford, XXXX-XXXX, pp. 6-7 (La.App. 4 Cir. 2/18/04), 867 So.2d 835, 840-41, recently reviewed the standard for suppressing a one-on-one out of court identification procedure:
A defendant who seeks to suppress an identification must prove both that the identification itself was suggestive and that a likelihood of misidentification existed as a result of the identification procedure. State v. Prudholm, 446 So.2d 729, 738 (La.1984) State v. Valentine, 570 So.2d 533 (La.App. 4 Cir.1990). One-on-one confrontations between the suspect and the victim, while not favored by law, are generally permissible when the accused is apprehended within a short time after the offense and is returned to the scene of the crime for an *803 on-the-spot identification. State v. Robinson, 404 So.2d 907, 909-910 (La.1981). Such a process assures reliability and fosters prompt release of innocent suspects. Id.

Even if the identification could be considered suggestive, it is the likelihood of misidentification that violates due process, not merely the suggestive identification procedure. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 932. Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253[, 53 L.Ed.2d 140] (1977). Even a suggestive, out-of-court identification will be admissible if it is found reliable under the totality of circumstances. State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517.
The U.S. Supreme Court has set forth a five-factor test to determine whether a suggestive identification is reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. Manson v. Brathwaite, supra; Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In evaluating the defendant's argument, the reviewing court may consider all pertinent evidence adduced at the trial, as well as at the hearing on the motion to suppress the identification. State v. Higgins, 01-368 (La.App. 5 Cir. 10/18/01), 800 So.2d 918; State v. Clennon, 98-1370 (La.App. 5 Cir. 6/30/99), 738 So.2d 161, 164. A trial court's determination on the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Bickham, 404 So.2d 929 (La.1981); State v. Offray, XXXX-XXXX (La.App. 4 Cir. 9/26/01), 797 So.2d 764.
In Ford, the victim was accosted by the defendant in the bathroom of a French Quarter restaurant. When one of her friends went to check on her, the defendant fled and was pursued by other friends of the victim. They were able to apprehend the defendant a few blocks away and held him until police arrived. One of the friends then returned to the restaurant to get the victim who went to the scene and identified the defendant. This Court held that it was reasonable and appropriate to attempt to secure an identification immediately. The Court cited State v. Carter, 99-2234 (La.App. 4 Cir. 1/24/01), 779 So.2d 125, which involved a fact situation very similar to the instant one. In that case, several people were robbed within a short period of time. One of the victims was robbed by the defendant, who exited a white van and then fled in it after the robbery. She was able to describe the vehicle to the police. While she was still talking to the officers, she learned that the police were investigating a disturbance that had just occurred nearby. That disturbance was another armed robbery involving suspects who fled in a white van at high speed when a police officer attempted to pull them over. The first victim was transported to the scene of the disturbance where she observed the defendant in handcuffs. She identified him as the person who had robbed her. She also identified her purse and a gun that had been inside the purse when it was stolen; these items had been found at the same location where the defendant and another suspect were apprehended hiding after they had fled from the van. The victims of the other robberies also identified the defendant as the person who had robbed them. This Court concluded that, even if the procedure *804 for identifying the defendant was suggestive, it was reliable and reasonable "[g]iven the fact that he had just emerged from a van involved in a high-speed chase with police officers...." Carter, p. 15, 779 So.2d at 136.
The facts in the instant case are just as strong, if not stronger, as those in Carter to justify the show-up identification procedure used. A description of the vehicle stolen from the victims was broadcast within moments of the robbery, and Officer Mejia made contact with the stolen vehicle only minutes later. When he attempted to stop the vehicle, the driver sped off, stopping only because he had disabled the vehicle. At the motion to suppress identification hearing, the State presented the testimony of Officer Shannon Kleinschmit[1] who related that he also responded to the broadcast report of a robbery suspect in a white Achieva with Texas plates. Officer Kleinschmit, who was in a separate vehicle from Officer Mejia, participated with other units in a canvas of the area where the suspect was believed to be headed. The stolen vehicle was located at Danneel and Philip Streets within five to seven minutes of the dispatch. Officer Kleinschmit was behind Officer Mejia's unit when the latter tried to stop the defendant, and both units pursued the defendant until he wrecked the victim's vehicle. The defendant was apprehended while he was still inside the car; the victims' purses were inside along with a firearm.
Both victims testified at the motion to suppress hearing and related that they were separated from each other prior to the identification procedure. The identifications occurred less than thirty minutes after the robbery. The victims identified their purses at the scene and were allowed to take them away after they had been checked and photographed.
Furthermore, Quiana Henderson testified at the motion hearing that, when she viewed the defendant, he was not alone; instead, he was standing with another black male who was wearing "slacks and a casual-like shirt." Ms. Henderson did not learn until later that this second male was Detective Jones. Ms. Collins also testified that defendant was with a second man when she made the identification. She stated that she did not see any handcuffs on the defendant and that both of the men had their arms behind their backs.
Under the five Manson v. Brathwaite factors, the identification appears reliable. The victims testified that there was lighting outside Ms. Henderson's house from a nursing home parking lot next door. Ms. Collins actually viewed the defendant twice, once when he made eye contact walking down the street, and again when he demanded her valuables. Both victims were certain of their identifications which occurred less than thirty minutes from the incident. At the motion hearing Officer Franklin testified that the victims told her that they would be able to identify the perpetrator. Of the five factors, only the lack of an initial description appears to support a finding that the identifications were not reliable. Neither victim gave a detailed description of the perpetrator to Officer Franklin, merely stating that he was a black male who was older. However, at trial Officer Franklin also testified that, at the time, she did not ask the victims any specific questions about the perpetrator because she was trying to get a vehicle description because she "knew that they would identify him once they got the car back." Thus, from the initial report of the victims, it appeared that they *805 were confident that they had a sufficient opportunity to view the perpetrator.
Overall, it appears that the identification procedure in this case was reasonable and the results reliable. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 2
In counsel's second assignment of error, she contends that the trial court imposed excessive sentences upon the defendant. However, as discussed in the error patent review above, both of the sentences must be vacated and the matter remanded for resentencing. Therefore this issue need not be addressed, but instead should be pretermitted, reserving to the appellant the right to appeal his resentencing.

PRO SE ASSIGNMENT OF ERROR NUMBER 1
In his first pro se assignment of error, the appellant argues that the assistant district attorneys who prosecuted him at trial lacked the authority to do so. This issue was raised during trial by defense counsel during a bench conference. The court placed the discussion on the record after the State rested its case. According to the trial court, the defense objected to the trial going forward because he felt that the prosecutors were "not authorized under law to prosecute on behalf of the State of Louisiana in this state; more particularly, in this parish." The allegation was that there was "no evidence that Mr. Jordan [sworn in three days earlier as District Attorney in and for the Parish of Orleans] ha[d] in fact granted commissions and/or warrants under the state provision that provide [sic] compensation for the District Attorneys" who were present during the jury selection and trial. Defense counsel was then given the opportunity to expound on his position, and he stated:
What I have been informed of, and the district attorneys who are here can verify, is that on Tuesday, after selection and swearing of the Jury, the assistant district attorneys were called back to the District Attorney's Office and all credentials issued by Mr. Harry Connick, the former District Attorney for the Parish of Orleans, were recalled,.... If all credentials issued by Mr. Harry Connick were in fact withdrawn and canceled, otherwise surrendered and Mr. Jordan did not issue new credentials..., then I do not believe they're authorized to practice on behalf of the state.
The State was asked to respond, and one of the prosecutors informed the court that it was only a matter of "inventory" to turn in their property so that it could be reissued with Mr. Jordan's name on their identifications. The prosecutor denied that any of them were terminated as employees, but instead told the trial court that they were informed that they were to continue working as they had been. The second prosecutor confirmed this; both indicated that the prosecutor who assisted with jury selection was also still employed and was handling a rape case in another section of court. The court overruled any defense objection to the trial proceeding, finding that there was no basis to find that the three assistant district attorneys who had participated in the jury selection and trial were not authorized to continue in their employment.
After the trial court had overruled the defense objection, defense counsel noted that he might need to obtain a subpoena duces tecum to establish whether the district attorney's office had documentation to show that the assistants were still employed. The trial court indicated that such a subpoena would be issued if the matter were pursued during any post conviction relief proceedings.
*806 Nothing in the appellate record shows that the court's ruling at trial was erroneous. The prosecutors stated that their employment had never been terminated. No evidence to contradict this was presented at any proceedings following the trial. On the record before this Court, it appears that at most, the prosecutors had surrendered their employee identifications so that new ones reflecting the name of the new district attorney could be issued.
This assignment of error lacks merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error, the appellant pro se contends that the trial court erred in allowing the State to introduce the hat and gun seized from the scene because the officer who actually seized these items did not testify. Defense counsel objected on the grounds that the chain of custody and foundation for introduction of these items were insufficient.
A trial court has great discretion in determining whether a sufficient foundation has been laid for the introduction of evidence. State v. Lewis, 97-2854, p. 31 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004, 1022. In State v. Merrill, 94-0716 (La.App. 4 Cir. 1/31/95), 650 So.2d 793, 799, this Court found:
[A] lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than its admissibility.
In order to introduce demonstrative evidence at trial, the law requires that the object be identified. This identification may be visual (i.e., by testimony at the trial that the object exhibited is the one related to the case) or it may be by chain of custody (i.e., by establishing the custody of the object from the time it was seized to the time it was offered in evidence.)
The law does not require that the evidence as to custody eliminate all possibility that the object has been altered. For admission, it suffices that it is more probable than not that the object is the one connected to the case. (Citations omitted).
According to the appellant, the police report reflects that it was Officer Tommy Felix who personally seized the hat and gun; however a copy of the report is not in the record. Nevertheless, Officer Mejia testified at trial that he personally did not seize these items, but he did identify them in court as the items that he saw on the scene. He also identified photographs of the scene that depict the hat and the gun. Officer Mejia further testified that he initially took "custody" of the hat and gun and turned them over to the officers who were investigating the incident as they were in charge of documenting the evidence. Thus, it does not appear that the trial court abused its discretion in determining that a sufficient basis for introduction of the evidence existed.
This assignment of error lacks merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 3
In his third assignment of error the appellant pro se contends that he was denied his right to a fair trial because he was not given an opportunity to cross-examine Officer Felix who allegedly seized the physical evidence. He avers that the officer failed to appear when subpoenaed. However, the record does not support his contention that the defense subpoenaed the officer and he failed to appear. The defense witness list consistently contained only the names of three persons, Williams Stills, Beverly Childs and Nekeysha Bryan. Of these witnesses, the first two testified on his behalf.
*807 La.C.Cr.P. art. 841 provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Nothing in the trial transcript indicates that the defense counsel alleged he had requested a subpoena for Officer Felix, nor did counsel move for a recess or a continuance when Officer Felix failed to testify.[2] Considering the total lack of any evidence in the record that the defendant's right to call witnesses was denied, this assignment of error lacks merit.

CONCLUSION
Accordingly, for the foregoing reasons, the defendant's convictions are affirmed. The appellant's sentences are vacated, and this matter is remanded for resentencing.
CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.
CANNIZZARO, J., concurs in part and dissents in part.
CANNIZZARO, J., CONCURS IN PART AND DISSENTS IN PART.
I concur with the majority in affirming the defendant's conviction. I respectfully dissent, however, from the majority's decision to vacate the defendant's sentence and remand this case for resentencing.
In this case the trial court judge did not deny the defendant's motion for post verdict judgment of acquittal until after the defendant had been sentenced. As noted by the majority, La. C.Cr.P. art. 821(A) provides that a motion for post verdict judgment of acquittal must be disposed of before sentencing. This mandate was not followed in the instant case.
Although I agree that failure to comply with La. C.Cr.P. art. 821(A) constituted an error patent, I believe that the error was harmless under the circumstances of this particular case. The error constituted a technical violation of the law and did not affect the substantive rights of the defendant. There was no indication whatsoever in the record that the trial court judge would in any way adjust, modify, or otherwise change the defendant's sentence if he were to reconsider it. No motion to reconsider the sentence was filed by either the defendant or the state in this case, and the trial court judge did not reconsider the sentence on the court's own motion. The trial court judge sentenced the defendant to the maximum sentence possible, and there is no reason to believe that the trial court judge would change the sentence in any way because of the technical error that occurred.
In addition to the legal reasons for not vacating the defendant's sentence, there are also compelling practical reasons not to vacate the sentence. In the interest of judicial economy, the trial court should not be required to duplicate the sentencing hearing when it is clear that the defendant's sentence will remain the same. Also, there is always the potential for danger in transporting violent, convicted felons from the Department of Corrections facilities to crowded courthouses, especially in large urban areas. In this case the defendant's ultimate sentence and his constitutional rights will not be affected by vacating the present sentence. Therefore, the risk that would be incurred by placing the defendant in close proximity to the general public in a New Orleans courthouse is not justified.
*808 Because I would not vacate the defendant's sentence, I would also consider at this time the defendant's claim that his sentence is excessive. The majority's decision results not only in a lack of judicial economy at the trial court level, but also at the appellate level, because we will now have to revisit the defendant's appeal after he is resentenced.
NOTES
[1] Officer Mejia did not testify at the pretrial hearing but did testify at trial.
[2] In the motion for post verdict judgment of acquittal, counsel averred that the officer who testified was not the one who seized the evidence, and thus it should not have been admitted (R. 68). Counsel did not aver that he attempted to call the officer who seized the evidence as a witness and was denied the opportunity to do so.