LTERRI F. LOVE, J.
STATEMENT OF THE CASE
On July 18, 2002, the State filed a bill of information charging the defendant-appellant, Mirodello Ashford, with two counts of violating La. R.S. 14:64 relative to armed robbery. On January 16, 2003, Mr. Ash-ford was found guilty as charged on both counts. The State filed a multiple bill of information charging that Mr. Ashford was a third time offender. On May 14, 2003, the trial court determined Mr. Ashford was a third time offender as to count one. Subsequently, the court sentenced Mr. Ashford to one hundred ninety-eight years on count one and ninety-nine years on count two, without the benefit of probation, *162 parole, or suspension of sentence, to run concurrently with each other.
Mr. Ashford appealed the trial court’s finding. During the pendency of the appeal, pursuant to an order of this Court, the trial court ruled on the motion for' post judgment verdict of acquittal, which was filed prior to Mr. Ashford’s sentencing. The trial court denied the motion. This Court subsequently affirmed the convictions, but vacated the sentences and remanded the matter for re-sentencing, reserving to the defendant the right to appeal from his re-sentencing. State v. Ashford, 2003-1691 (La.6/16/04), 878 So.2d 798, writ denied, 2004-2015 (La.1/7/05), 891 So.2d 667.
On August 23, 2004 the defendant, Mr., Ashford, appeared for re-sentencing. The defense filed a supplement to the post-verdict motion for acquittal, which the trial court denied; the trial court denied the State’s motion for new trial. Subsequently, Mr. Ashford waived any delays in sentencing. The trial court imposed the same sentences it had originally imposed, one hundred ninety-eight years on count one and ninety-nine years on count two. Both sentences were to be served without the benefit of probation, parole, or suspension of sentence, to run concurrently with each other. The trial court noted an objection to protect the record and denied any motion for reconsideration. It is from the trial court’s re-sentencing that Mr. Ash-ford appealed.
FACTS AND PROCEDURAL HISTORY
■ The facts of this case as set forth in this Court’s opinion, in State v. Ashford, 2003-1691 (La.App. 4 Cir. 6/16/04), 878 So.2d 798 are as follows:
On July 3, 2003 at approximately 9: 15 p.m., Quiana Henderson and Rachell Collins left Ms. Henderson’s home at 3301 LaSalle Street. As Ms. Henderson was locking the gate, Ms. Collins saw two people walking on the street. The first one passed by them and made some type of joke. The second man, whom she later identified as the defendant, was on the opposite side of the street and made eye contact with her. Then, Ms. Henderson walked around the house to put garbage into the dumpster in the parking lot, while Ms. Collins opened the trunk of her vehicle to retrieve a CD player which Ms. Henderson had asked her to get. Suddenly, Ms. Collins heard someone say, “Bitch, give me your purse.” She realized that the man speaking to her was the same one who had been walking on the opposite side of the street. At first, she told him he must be kidding and to go about his business, but then she saw that he had a weapon. Believing she was about to die, she 13gave the defendant her purse and keys. She then laid on the ground at his direction.
Quiana Henderson returned from dumping the trash and saw her friend on the ground, but could not see anyone else because the trunk lid was raised. She heard a man saying, “Bitch, give me your purse and your keys, and get on the ground.” She did not do anything at first because of her shock. The defendant then came out from behind the trunk, and she complied with his orders after he threatened to blow her brains out. As both victims were on the ground, the robber went to Ms. Collins’ car and tried to open the door, but the alarm went off. He came back to them, threw the keys down, pointed the gun at Ms. Henderson’s head, and demanded that Ms. Collins turn the alarm off or he would blow Ms. Henderson’s brains out. After Ms. Collins showed the defendant how do [sic] turn the alarm off by pressing the button on the key, he went back to the car, threw the women’s purses *163 inside, and prepared to drive off. However, he did not do so immediately because there was a police unit on the corner of Washington and LaSalle handling a traffic matter. After a few minutes, the defendant left in Ms. Collins’ vehicle.
After the defendant left the scene, Ms. Henderson jumped up and ran to the corner. There she informed the police officer that she and her friend had just been robbed. She told the officer about the car, which was a white 1997 Achieva with tinted windows and a Texas license plate, and gave a brief description of the robber. The clothing description consisted of a baseball cap and a printed shirt. She further described the perpetrator as a" black male in his thirties. A short time later the police informed Ms. Henderson and Ms. Collins that the car had been located and that they were going to be transported to that scene for a possible identification of the robber. The women were taken to the location where the car had been found. There, they were asked separately to view two men standing on the corner. They both identified the defendant as the person who robbed them. The identifications were repeated in court, with the additional fact that at trial the defendant had facial hair, but he did not at the time of the robbery
Ashford, pp. 2-5, 878 So.2d at 800-01.
| ¿Assignments of Error
The appellant’s sole argument is that the sentences imposed by the trial court are constitutionally excessive. The appellant contends that the armed robberies he committed were not among the worst. He argues that the court focused on the mental trauma suffered by the victims, but failed to account for the fact that neither victim was physically injured or harmed. The appellant further argues that maximum sentences should be reserved for the most serious violations and worst offenders, and that, even considering his criminal history, he is not the worst such offender.
In State v. Gorby, 2003-1666 (La.App. 4 Cir. 2/11/04), 868 So.2d 193, this Court reiterated the standard for reviewing a sentence:
Article I, § 20 of the Louisiana Constitution of 1974 provides that “[n]o law shall subject any person ... to cruel, excessive or unusual punishment.” A sentence, although within the statutory limits, is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless and needless imposition of pain and suffering.” State v. Gaston, 477 So.2d 868, 871 (La.App. 4 Cir.1985). However, the penalties provided by the legislature reflect'the degree to which the criminal conduct is an affront to society. State v. Brady, 97-1095 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264.
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Black, 98-0457, p. 8 (La.App. 4 Cir. 3/22/00), 757 So.2d 887, 892. If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case. State v. Caston, 477 So.2d at 871. The reviewing court must also keep in mind that maximum sentences should be reserved for the most egregious violators of the offense so *164 charged. State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982).
|sThe trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
Gorby, pp. 3-4, 868 So.2d at 195-96.
Furthermore, as noted in State v. Allen, 2003-2156, p. 14, (La.App. 4 Cir. 5/19/04), 876 So.2d 122, 131, writ denied, 2004-1704 (La.11/19/04), 888 So.2d 194, when there is a mandatory minimum sentence such as life imprisonment for second degree murder:
There is only one way that a defendant can rebut the presumption that a mandatory minimum sentence imposed by the legislature is constitutional. .The defendant must show that “because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.” State v. Lindsey, 99-3256, 99-3302, p. 5 (La.10/17/00), 770 So.2d 339, 343.
At re-sentencing, the trial court gave no reasons for the sentences, but instead imposed the same sentences as it originally had. A review of the transcript of the original sentencing, contained in the record from the first appeal and an exhibit before this Court, reflects that the trial court gave extensive reasons for the sentences. First the trial court noted the “pain and anguish” which the' two female victims experienced when they had to repeat in court the “filthy, obscene language” that the- defendant used during the crime. The trial court then told the defendant that he had been before that court previously and that his presence there again had “sent us a message that you’re not going ' to comply by any — with any rules, any laws, any regulations, any statutes, any ordinances but your own.” |fi Finally, the trial court reviewed the facts, which included the defendant threatening to blow the victims’ brains out, stealing the automobile, and leading the police on a high-speed chase through the central part of the city.
In addition to reviewing the egregious aspects of the instant offense, the trial court noted that the defendant had been convicted of, or pled guilty to, at least six counts of armed robbery and one count of attempted murder.
The trial court noted the nature of the defendant’s record and explained why it felt the maximum sentences were appropriate:
.• You have a record ... with a history that is reflected in that record of violence toward others. Armed robbery in and of itself according to the Louisiana Supreme Court is a pernicious offense. It’s one that’s fraught with a probability that someone’s going'to be hurt.
[[Image here]]
I believe, Mr. Ashford, you forfeited every right to enjoy any of the freedoms that you’ve [been] given at least two chances to enjoy if not three after being released from the department of correction’s custody. Each time you [sic] message to us is louder and clearer, you’re not going to abide by the rules.
In the cáse sub judice, Mr. Ashford repeatedly threatened to blow out the brains of the victims, at one point putting his gun to the head of one of the victims as she was on the ground in a prone position. When the police attempted to apprehend him; he fled at a high rate of speed and was caught only whén he ran into a curb, disabling the stolen vehicle. Mr. Ashford’s *165 acts were not minor and placed several individuals in danger. Considering his lengthy criminal record of 17armed robberies and the complete absence of any possible mitigating circumstances, the maximum possible sentences are not excessive.
Although the trial court more than adequately explained the basis for the sentences it imposed, in light ‘of La. R.S. 15:529.1 A(l)(b)(ii), the sentence of 198 years on count one is vacated as a matter of law and the matter remanded for imposition of a life sentence. The sentence on count two for the statutory maximum without the benefit of parole, probation, or suspension of sentence pursuant to La. R.S. 15:529.1, as a first offender is not constitutionally excessive.
SENTENCE SET ASIDE IN PART; AFFIRMED IN PART; REMANDED.