JOY COSSICH LOBRANO, Judge.
LThe State of Louisiana charged the defendant, Dominique S. Sipp, by bill of information, with unauthorized use of an access card, in an amount over $500, a violation of La. R.S. 14:67.3. The defendant pled not guilty. A jury found her guilty as charged on April 7, 2011. On July 7, 2011, the trial court denied defendant’s motion for post-verdict judgment of acquittal, and sentenced her to three years at hard labor with credit for time served, and ordered her to pay a fine and court costs. The trial court ordered the sentence to be served concurrently with any other sentence being served by the defendant. Defendant now appeals.
At trial, Deborah McDonald, the victim in this case, testified that her purse, containing, among other things, her credit cards, was stolen while shopping at the Wal-Mart on Tchoupitoulas Street in New Orleans. She subsequently informed each of her credit card companies and the three major credit bureaus of the theft. Nevertheless, she eventually learned that unauthorized charges had been made at the Hilton hotel, the Marriott hotel, the Doub- *651 letree hotel, and Domino’s Pizza. Most of the charges were for the Hilton Hotel in New Orleans. Ms. McDonald denied knowing the defendant or ever giving her permission to use her credit card. |2When shown a copy of a Hilton Credit Card Payment Authorization Form, she denied that the “cardholder signature” bearing her name was her signature.
Hilton’s Assistant Director of Finance, Judy Sirit, testified at trial. Ms. McDonald’s apparently forged signature on the credit card authorization form was dated June 14, 2009. The authorization was for Niechia Hunter, and it listed an American Express card ending in “4000.” Another authorization for Justin Sipp was purportedly signed or forged on June 18, 2009. On June 17, 2009, the defendant purportedly signed a check for Room 2711 in the amount of $262.73 for a one liter bottle of Grey Goose vodka. She also signed a hotel registration card for Room 2711. The registration card showed an arrival date of June 16, 2009, and a departure date of June 18, 2009. The rate was $229 per day. The folio[1] or receipt for the defendant’s charges to Room 2711 show she charged a total of $1030.62 to an American Express card ending in “4000” between June 16 and 18, 2009. A search performed by Hilton’s credit card processor, Dollars on the Net, showed that Niechia Hunter, Justin Sipp, and the defendant charged a total of $21,167.81 to Ms. McDonald’s credit card between June 16 and 24, 2009. It is noteworthy that the authorization forms purportedly allowing Niechia Hunter and Justin Sipp to use the credit card number ending in “4000” listed “3219 ½ Ursulines” as Ms. McDonald’s billing address. When the defendant checked into Room 2711, her address was listed as “3219 Ursuline.” This is also the address shown on the list of itemized charges to her room.
Detective Ian Watt of the New Orleans Police Department’s Eighth District Property Crimes Division began an investigation on August 28, 2009. The initial 1 sreport he received indicated that Niechia Hunter, Justin Sipp, and the defendant had obtained hotel rooms using a stolen credit card belonging to Ms. McDonald. Upon reviewing the hotel folios, Det. Watt determined that a woman named Dominique Sipp had checked into the hotel. A warrant was issued for Dominique Sipp on November 25, 2009.
On November 25, 2009, Det. Watt responded to an unrelated suspicious person call at the Hilton. Upon arriving, he saw a lady standing near the hotel security office door with a little girl. An employee in the Hilton Security Department approached Det. Watt, and told him, “Those are the same two individuals that I saw in the video from June 2009.” Det. Watt reviewed the surveillance video taken at the hotel. According to Det. Watt, the defendant let the police know who she was when the police “had to find somebody to take care of the juvenile and at that time she provided us with information so that we could contact the relative.” When Det. Watt told the defendant that she was under investigation for a June 2009 incident, she stated, “I wasn’t the only one there.”
On cross-examination, Det. Watt testified that Niechia Hunter went to the hotel front desk and authorized the charge for the defendant’s room to Ms. McDonald’s card under the authorization that was purportedly provided by Ms. McDonald. The defendant never presented a credit card with Ms. McDonald’s name on it.

ERRORS PATENT

The record reveals no errors patent.

*652
ASSIGNMENT OF ERROR NUMBER 1

The defendant argues that the evidence is insufficient to support her conviction because it does not show that she was aware of Niechia Hunter’s |4scheme to use Ms. McDonald’s credit card without authorization. She asserts that the record does not show she knew anything was being charged to Ms. McDonald’s card, and that none of the bills bearing her name reference Ms. McDonald’s American Express card. She asserts that she was Niechia Hunter’s unwitting guest. The defendant asserts that the record does not show she was a principal to Hunter’s crime. She further avers that the State did not prove its case without showing she knew “how Ms. Hunter was paying to host her.” She also asserts that the State’s circumstantial evidence fails to exclude every reasonable hypothesis of innocence. The defendant also argues that the State’s evidence showed she only charged for a bottle of Grey Goose vodka, which cost less than $500.
The State counters that circumstantial evidence showed the defendant was a principal to the crime. The State points to 1) the authorization form purportedly authorizing Hunter to make charges to Ms. McDonald’s card, and 2) Det. Watt’s testimony that Hunter went to the hotel’s front desk and authorized the defendant’s charges to Ms. McDonald’s card. The State notes that Hunter checked in using an address of “_219 Elysian,[2]” while the defendant listed her address as “3219 Ursuline” and argues that the addresses are essentially the same. The State further argues that, as the defendant knew Hunter well enough to accept an expensive hotel stay, it can be inferred that she knew Hunter well enough to know the credit card she was using was stolen. Finally, the State points to the defendant’s hotel folio, which lists her address as 3219 Ursuline, the same address listed as Ms. McDonald’s in the authorization form.
|sIn evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole because that is what a rational trier of fact would do. Mussall, 523 So.2d at 1310. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. Id. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 *653 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Williams, 2007-0700, p. 5 (La.App. 4 Cir. 2/13/08), 977 So.2d 1101, 1108. If a rational trier of fact reasonably rejects the defendant’s hypothesis of innocence, that hypothesis falls; and, unless another one creates reasonable doubt, the defendant is guilty. State v. Captville, 448 So.2d 676, 680 (La.1984). On review, this Court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events. State v. Smith, 2006-318, p. 5 (La.App. 4 Cir. 11/21/06), 946 So.2d 218, 221. Rather, this Court, when evaluating the evidence in the light most favorable to the prosecution, must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror
could not have found guilt beyond a reasonable doubt under Jackson. Id.
A factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Huclca-bay, 2000-1082 (La.App. 4 Cir 2/6/02), 809 So.2d 1093; State v. Harris, 99-3147 (La. App. 4 Cir. 5/31/00), 765 So.2d 432.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741, 751 (La.1982); State v. Butler, 322 So.2d 189 (La.1975). In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia; State v. Huizar, 414 So.2d at 751.
17In this case, the applicable elements of the crime charged are: 1) using an access card belonging to another without permission[3], 2) to obtain credit, money, goods, services, or anything of value, 3) “with the intent to defraud.” La. R.S. 14:67.3(B)[4]. Because the statute punishes *654 only those intending the consequence of defrauding the victim, unauthorized use of an access card is a specific intent crime. 1 xSee La. R.S. 14:10 (specific intent exists where the offender actively desires the prescribed criminal consequence).
The record shows that Ms. McDonald testified at trial that her purse containing, among other things, her credit cards, was stolen. She further testified that she reported the theft to credit bureaus and her credit card companies. She did not testify when the theft occurred or when the credit cards were reported stolen. However, she said she never gave the defendant permission to use her card and denied signing the Hilton Credit Card Payment Authorization Form that authorized Niechia Hunter to make charges to her card. The hotel folio for Room 2711 shows that the defendant made $1,030.62 worth of charges to Ms. McDonald’s card for her hotel room, a bottle of Grey Goose Vodka, and other things. Accordingly, the record shows that the defendant used Ms. McDonald’s “access card” without her permission to *655 obtain goods, services, or things of value. However, the defendant argues that she did not know that her charges were being made to Ms. McDonald’s card, and that she thought she was Hunter’s guest. This argument goes to her intent to defraud.
The authorization that Ms. McDonald denied signing was dated June 14, 2009. Another authorization form purportedly authorizing Justin Sipp to use the same credit card was dated June 18, 2009. The defendant signed a hotel registration card reflecting that she stayed in Room 2711 from June 16 to June 18, 2009. She also charged a $262.73 bottle of vodka to her room on June 17, 2009. The defendant was responsible for a total of $1,030.62 in unauthorized charges to Ms. McDonald’s card during a two-night stay at the hotel. The defendant’s charges included, among other items, $85.87 for “REFRESHMENT CENTER,” $29.99 for “LODGNET MOVIE,” and $9.95 for “LODGENET MUSIC” on June |;,17, 2009. She charged another $111.94 for “REFRESHMENT CENTER” on June 17, 2009. The State points to the exorbitance of these charges as indicia that the defendant knew the charges were not being paid by Hunter. The State also points to the similarity in addresses provided by Hunter and the defendant. More indicative of the defendant’s knowledge of the lack of authorization to use the card, however, is that she provided an address to the hotel that is almost identical to Ms. McDonald’s purported billing address provided on the authorization forms to Hunter and Justin Sipp. Ms. McDonald’s billing address was written on the authorization forms as 3219 ½ Ursulines, whereas the defendant’s address was 3219 Ursulines. The almost identical addresses of the defendant and Ms. McDonald indicate that the defendant knew that she was charging everything to Ms. McDonald’s card. This fact, combined with the exorbitant charges made, support the jury’s finding that the defendant had intent to defraud. Finally, the defendant’s assertion to Det. Watt, when he informed her that he was investigating her for a June 2009 incident that, “I wasn’t the only one there[,]” is tantamount to an admission that she knew about Hunter’s unauthorized use of Ms. McDonald’s card and partook in the fraud.
As to the quantum, the record clearly supports a finding that the defendant charged over $500. As discussed above, the folio for room 2711 shows that the defendant charged $1,030.62 to Ms. McDonald’s card.

ASSIGNMENT OF ERROR NUMBER 2

The defendant argues that her three-year sentence is excessive. In doing so, she points to the district court’s finding that she was responsible for over $15,000.00 in charges, when the record shows she only charged $1,030.62. She | inalso questions the trial court’s excluding probation because of its finding that she was part of “an elaborate scheme.”
Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that “[n]o law shall subject any person to • • • excessive • • • punishment.” (Emphasis added.) Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 2001-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. Id. A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether anoth *656 er sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 2000-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; cf. State v. Phillips, 2002-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906
An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La.C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed. State v. Trepagnier, 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181. However, the articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 819. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
If the reviewing court finds adequate compliance with art. 894.1, it must then determine whether the sentence the trial court imposed is too severe in light of the particular defendant as well as the circumstances of the case, “keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.” State v. Landry, 2003-1671, p. 8 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239.
The defendant faced a penalty of up to five years and a fine of up to two thousand dollars. La. R.S. 14:67.3(B), La. R.S. 14:67(B)(2). In sentencing the defendant, the trial court found an undue risk that she would commit another crime during any suspended sentence, and that she was part of a scheme involving over $15,000 being charged to Ms. McDonald’s credit card for the defendant’s room. The trial court’s finding that over $15,000 was charged to the defendant’s room was technically incorrect. However, the trial court’s finding that there was a scheme involving over $15,000 in charges is supported by the record. The record shows that between Hunter, Justin Sipp, and the defendant, a total of $21,167.81 was charged to Ms. McDonald’s credit card. The defendant’s protest that she “wasn’t the only one there” evidenced the existence of a scheme. Moreover, the trial court issued a sentence consistent with a finding that between $500 and $1,500 were misappropriated. See La. R.S. 14:67.3(B), La. R.S. 14:67(B)(2). Individuals misappropriating over $1,500 face a penalty of up to ten years in prison. Moreover, immediately prior to sentencing, the trial court addressed another case wherein the judge had found the defendant guilty of another crime, h 9See La.C.Cr.P. art. 894.1(B)(12)(Offender persistently involved in similar offenses not already considered as criminal history or in multiple offender proceedings). Under these circumstances, the record reveals no abuse of discretion by the trial court.
For the reasons stated above, the defendant’s conviction and sentence are affirmed.
AFFIRMED

. A hotel opens a "folio” upon a guest’s check-in.

. The copy of Hunter’s folio in the record is cut off.

. A "forged access card is "any card, plate, account number, paper, book, or any other device, issued to a person which authorizes such person to obtain ... anything of value." La. R.S. 14:67.3(A)(1).

. La. R.S. 14:67.3 provides:
A.(l) “Access card” shall mean and include any card, plate, account number, paper, book, or any other device, issued to a person which authorizes such person to obtain credit, money, goods, services, or anything of value, whether contemporaneously or not, by use of any credit or deferred payment plan with the issuer or by use of debiting or charging such person’s demand deposit or savings or time account with the issuer or by debiting or charging any other
funds such person has on deposit with the issuer.
(2) "Revoked Access Card” as used herein shall mean an Access Card which has been cancelled or terminated by the issuer of said Access Card.
(3) "Person” as used herein shall mean and include natural persons, or any organization, or other entity.
(4) "Issuer” as used herein shall be the depository and/or creditor issuing the Access Card, directly or through another entity-
(5) The aggregate amount or value of credit, money, goods, services or anything else of value obtained shall determine the value of the misappropriation or taking in determining the penalty under R.S. 14:67 when the offender has obtained the credit, money, *654 goods, services or anything else of value from any one issuer or the offender has used an Access Card, or referred to a nonexistent Access Card on two or more occasions within any consecutive ninety day period.
B. Whoever, directly or indirectly, by agent or otherwise, with intent to defraud, (1) uses a forged Access Card, (2) makes reference by number or other description to a nonexistent Access Card, (3) steals or wrongfully appropriates an Access Card, or (4) uses an Access Card belonging to another person without authority of said person; thereby obtaining, whether contemporaneously or not, credit, money, goods, services or anything of value shall be guilty of theft and shall be subject to the penalties provided for the crime of theft in R.S. 14:67.
C. Whoever, directly or indirectly, by agent or otherwise, with intent to defraud, uses a revoked Access Card, thereby obtaining, whether contemporaneously or not, credit, money, goods, services or anything of value shall be guilty of theft and shall be subject to the penalties provided for the crime of theft in R.S. 14:67. For purposes of this Subsection, it shall be presumptive evidence that a person used a revoked Access Card with intent to defraud if the said person, directly or indirectly, by agent or otherwise, uses the said Access Card after actually receiving oral or written notice that the Access Card has been cancelled or terminated, or if said person, directly or indirectly, by agent or otherwise, uses the said Access Card at a time period more than five days after written notice of the termination or cancellation of said Access Card has been deposited by registered or certified mail in the United States mail system. Said notice shall be addressed to the person to whom such Access Card has been issued at the last known address for such person as shown on the records of the issuer.
D. Whoever, directly or indirectly, by agent or otherwise, with the intent to defraud, uses an Access Card to obtain, whether contemporaneously or not, money, goods, services or anything of value, and the final payment for said items is to be made by debiting or charging said person’s demand deposit or savings or time account with issuer, or by debiting or charging any other funds said person has on deposit with issuer, and there are not sufficient funds on deposit to the credit of said person with the issuer to make payment in full of said items obtained, said person shall have committed the crime of theft in R.S. 14:67. Said person’s failure to pay the amount due on said items obtained:
(1) Within ten days after written notice of said amount due has been deposited by certified or registered mail in the United States mail system addressed to the person to whom such Access Card has been issued at the last known address for such person as shown on the records of issuer; or
(2) Within ten days of delivery or personal tender of said written notice shall be presumptive evidence of said person's intent to defraud.
E. As used herein and in R.S. 14:67, the Access Card itself shall be a thing of value, with a value less than one hundred dollars.
F. In addition to any other fine or penalty imposed under this Section or under R.S. 14:67, the court may, at its discretion, order as a part of the sentence, restitution.