STATE OF LOUISIANA     *     NO. 2023-KA-0686

VERSUS     *

    COURT OF APPEAL

KANETHRA BURNETT     *

    FOURTH CIRCUIT

    *

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 554-095, SECTION "H"
Honorable Camille Buras, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins)

**ATKINS, J., CONCURS IN THE RESULT.**


Jason R. Williams
District Attorney
Brad Scott
Assistant District Attorney
Chief of Appeals
Patricia Amos
Assistant District Attorney
Constance Tullier Assistant District Attorney
Joseph Tucker
Assistant District Attorney
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 South White Street
New Orleans, LA 70119-5045


      COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158

COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**JULY 9, 2024**

*DLD*
*SCJ*

The defendant, Kanethra Burnett, appeals her convictions and resulting sentences for two counts of aggravated battery pursuant to La. R.S. 14:34. For the reasons that follow, we affirm.

**STATEMENT OF THE CASE**

On April 25, 2022, the state of Louisiana filed a bill of information charging that the defendant committed aggravated battery upon Charles E. McNabb Jr. and Charles McNabb, III, on or about February 15, 2022.

Defendant entered pleas of not guilty and her jury trial commenced on April 12, 2023. On the same date that the trial began, the state filed a motion *in limine* to include statements made by a witness outside of court including the 911 call placed by Leon Smith and statements he made to officers who arrived at the scene. The trial court granted the state's motion *in limine* finding the statements made by Leon Smith were made immediately after the incident occurred and therefore admissible. Defendant objected, requested a stay, and sought review in this Court in writ 2023-K-0242. This Court denied defendant's writ on April 12, 2023. *State v. Burnett*, 2023-0242 (La. App. 4 Cir. 4/12/23) (unpub). The trial court denied a stay and the jury trial resumed on April 13, 2023.

1

On April 13, 2023, the jury found defendant guilty as charged on both counts. On June 5, 2023, the trial court denied defendant's motion for a new trial. On that same date, the trial court sentenced defendant to two terms of six years imprisonment in the Louisiana Department of Corrections at hard labor with all but eighteen months suspended and placed defendant on three years of active, supervised probation with both terms to run concurrently with credit for time served. The crimes were designated as crimes of violence.

On June 6, 2023, defendant filed a motion for appeal and designation of the record, which was granted.

**BACKGROUND**

At trial, the state called Officer Roderick Wright, a member of the NOPD Seventh District. On February 15, 2022, Officer Wright was dispatched via a 911 call to investigate an aggravated battery. Upon arrival at the scene, Officer Wright saw the two victims, who were screaming to the officers that the defendant had cut them. Officer Wright observed that the son was cut in the left arm and the father was cut in the back.

Officer Wright testified that he spoke to Mr. Leon Smith, a friend of the defendant, who was visiting her on the night of the incident. The body-worn camera video of the interview was played for the jury wherein Leon Smith told Officer Wright that the defendant never left the house and the injuries to the victims were weeks old. Officer Wright testified that he did not believe the injuries were dated, as the cuts were freshly bleeding. The cuts looked recent and very deep. Officer Wright interviewed the defendant who admitted to cutting the victims with a champagne glass after they rushed at her.

2

Regarding the injuries to the victims, Officer Wright testified that neither lost consciousness, but both were transported to the hospital.

Officer Wright observed a broken window in the front part of defendant's house. Glass was located inside of the defendant's living room which indicated that an object had been thrown through the window from the outside. In his interview with the defendant, Officer Wright learned of ongoing friction between the victims, the McNabb family, and defendant. Defendant alleged the victims had thrown trash in her driveway and had emptied garbage onto her yard. Officer Wright witnessed trash on the defendant's driveway while he was on the scene.

On re-direct, the video from Officer Wright's body-worn camera was played. The video revealed the defendant admitting to cutting the victims and Officer Wright observed that the defendant appeared to be intoxicated.

Charles McNabb III testified that per their usual morning routine his father would back his vehicle out of their single car driveway in order for him to back out his car. He testified that as he was backing out he could hear glass crunching under his tires. He stopped, got out and looked and then saw the defendant coming towards him. The defendant shouted at him that she placed the glass under the car then struck him in the face with a glass. Other wounds on his arms were caused by defending against other blows struck by the defendant. Charles McNabb Jr. came to the defense of his son and was stabbed in the back by the defendant. After the attack both victims went inside their home and 911 was called.

Photos of the injuries were introduced and depicted the injuries to Charles McNabb III's face, hand and forearm requiring sutures.

Charle McNabb III acknowledged that his family and the defendant had some issues in the past as they shared a common driveway and from time to time

the McNabbs were required to move the defendant's garbage can in order to access their autos. According to him, this was upsetting to the defendant.

He also testified that "stay-away" orders were issued in two prior incidents involving the defendant. The Orders were introduced into evidence. Charles McNabb Jr. testified that he lived at the same address for the past eleven or twelve years. He was an offshore worker, which required him to be away from his family twenty-eight days at a time. On February 15, 2022, police were called to his home because he was attacked by his neighbor. Charles McNabb Jr. related that this was not the first incident between his family and the defendant. The first incident occurred after defendant had positioned her garbage can in such a way that it was leaning on his son's car and he could not back his car out of his driveway without moving the garbage can. He stated that as he moved the garbage can the defendant came out of her house and an argument ensued. As they all returned to their homes, his son looked out of the window and saw the defendant scratch his car. The McNabbs all went outside to look at the damage to the car when the defendant charged out of her home and stabbed Mrs. McNabb in the hand.

Mr. McNabb Jr.'s testimony directly corroborated that of his son. He testified that he backed his car out of the driveway to allow his son to back out. He saw his son begin to back out then stop, get out of his car and see the glass under the car. In fact, he heard the glass cracking as his son was backing out. He then witnessed the defendant run toward his son while shouting that she "did it", raising her hand and striking his son in the face. He rushed to his son's defense. As he turned his son away from the

defendant she slashed him in the back. He denied striking the defendant or harassing the defendant in anyway, including emptying her trash onto the driveway or breaking her window.

Charles McNabb Jr. identified photographs of his injuries and described the medical attention he received. He specifically identified a photograph of the injury to his back and stated the wound on his back was caused when defendant stabbed him. He also confirmed that he worked offshore for long stretches of time and as a result of the two incidents with defendant, he worried about his family everyday while he was working offshore. He had no problem with any other neighbor.

The state offered evidence regarding the prior incident that occurred in August of 2021. The officer who investigated that incident testified that after interviewing Mr. and Mrs. McNabb and the defendant, he determined that the defendant had stabbed Mrs. McNabb with a knife and the defendant was arrested.

After the state rested, defendant called NOPD Officer, Kevin Penn, who investigated the first incident of stabbing which occurred on August 19, 2021. Defendant also recalled Officer Wright. The state offered rebuttal by calling Charles McNabb III. After closing arguments, the jury was charged. After deliberating, the jury returned a unanimous verdict of guilty on both counts.

**ERRORS PATENT**

The trial court did not observe the twenty-four hour delay before sentencing defendant after denying her motion for a new trial. La. C.Cr.P. art. 873 provides that if a motion for new trial or motion in arrest of judgment is filed, sentence shall not be imposed until at least twenty-four hours after the motion is denied, unless the defendant expressly waives the delay or pleads guilty. Here, the defendant waived the delay in sentencing. Accordingly, there is no error.

5

**ASSIGNMENT OF ERROR ONE**

In her first assignment of error, defendant alleges that the trial court erred in allowing statements to be introduced into evidence, including her bodycam recorded statement made at the scene to police, the 911 call, and bodycam statement at the scene by Leon Smith and the bodycam statements made at the scene by Charles McNabb Jr. and Charles McNabb III.

Defendant argues that Officer Wright should not have been questioned concerning the recorded statement she made at the scene of the incident, particularly as that recorded statement was suppressed in a pretrial ruling. Defendant also contends that the trial court erred when it allowed the testimonial hearsay of Leon Smith, a 911 caller, who also made statements on the scene that were recorded by the police body camera, to challenge the credibility of defendant's statements. Defendant argues that the errors were not harmless where the inadmissible hearsay was substituted for actual testimony.

The record reflects that defense counsel questioned Officer Wright regarding the statement made to him by the defendant. On re-direct, the state questioned Officer Wright regarding the defendant's statement on the scene, however, the defendant failed to lodge an objection. Without objection, a portion of the defendant's statement made to Officer Wright at the scene was played to the Jury. The failure to object bars defendant from raising this issue on appeal.

This Court in *State v. Gilliam*, 2021-0506 (La. App. 4 Cir. 3/10/22), 336 So. 3d 513, 529, stated:

> The Louisiana Supreme Court has held that the contemporaneous objection rule provides that "an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." *State v. Ruiz*, 06-1755, p. 8 (La. 4/11/07), 955 So.2d 81, 87 (citing La. C.Cr.P. art. 841(A); *State*

6

*v. Knott*, 05-2252, p. 2 (La. 5/5/06), 928 So.2d 534, 535). It is well established that "[t]he contemporaneous objection rule has two purposes: (1) to put the trial judge on notice of the alleged irregularity so that he may cure the problem and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection." *State v. Thomas*, 427 So.2d 428, 433 (La. 1982).

Defendant failed to object to the prosecutor's examination of Officer Wright. Moreover, she failed to object when the prosecutor played the portion of state's exhibit six during which defendant spoke to Officer Wright.

Louisiana courts routinely reject assignments of errors on appeal concerning instances where trial courts have allowed the state to question witnesses as to matters it otherwise would not have been permitted to delve into, when the defense counsel "opened the door" to such questioning. *See State v. Manning*, 2003-1982, p. 59 (La. 10/19/04), 885 So.2d 1044, 1097; *State v. Taylor*, 2001-1638, pp. 17-18 (La. 1/14/03), 838 So. 2d 729, 745-746; *State v. Robinson*, 2009-1137, pp. 7-8 (La. App. 4 Cir. 3/24/10), 33 So.3d 1019, 1023; *State v. Koon*, 96-1208, p. 25 (La. 5/20/97), 704 So. 2d 756, 771-772; *State v. Lagarde*, 2003-0606, p. 17 (La. App. 4 Cir. 12/10/03), 861 So.2d 871, 882. Defendant opened the door to the contents of her statement when defense counsel cross-examined Officer Wright. Accordingly, the trial court did not err when it allowed the evidence.

Defendant contends the state's introduction of the video-recorded statements of both victims at trial should not have been admitted because it constituted inadmissible hearsay. The defendant did object to the video recorded statement of Charles McNabb Jr. and Charles McNabb III, which were made to police, contending they were hearsay. The state responded that the video of the McNabbs

7

fell into the hearsay exceptions for excited utterances as the officers arrived within minutes of the occurrence of the incident, noting that the victims were still bleeding with open wounds.

Notwithstanding the "excited utterance" exception to the hearsay rule a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is …[c]onsistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]" La. C.E. art. 801(D)(1)(b).

In opening statement and on cross-examination of state witnesses, defendant questioned the credibility and motives of the McNabbs and implied that they had fabricated their version of the incident. Each of the McNabbs testified at trial consistent with the statements given in their video recorded statements and were subject to cross-examination. Accordingly the video statements were not hearsay. *See* La. C.E. art. 801(D)(1)(b).

Defendant argues that the body-worn camera video of the statement given by Leon Smith constituted hearsay and its admission into evidence was in error since it was testimonial in nature.

The state filed a motion *in limine* to include statements made by a witness outside of court. The motion was filed to address the admission of 911 call from a "Leon Smith" and the events that followed thereafter at the scene. The factual scenario presented to the court by the state, was that the 911 caller, "Mr. Smith" was on the scene at the time the police arrived and was recorded on police body cam repeating statements made shortly prior to the police arrival to the 911

8

operator. The 911 call and the statements were alleged to be approximately ten (10) minutes apart.

In *State v. Collins*, 2010-0757, pp.16-17 (La. App. 4 Cir. 5/11/11), 65 So.3d 271, 283, this Court addressed the issue of whether the introduction of a 911 tape, in a case in which the caller did not testify, was testimonial and violated the defendant's Sixth Amendment rights when admitted. In *Collins*, the Court stated:

> In *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), specifically in the context of 911 calls, the Supreme Court declared that "[s]tatements are nontestimonial when made in the course of police investigation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Conversely, statements are "testimonial when the circumstances objectively indicate that is no such ongoing emergency, and that the purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecutions." *Id*., 547 U.S. at 822.
>
> In the matter before us, the 911 calls ranged from descriptions of suspicious persons running with guns to people reporting the shooting….
>
> Applying *Davis* to the facts before us, we find that the 911 calls were non-testimonial and, therefore, the admission of the recording did not implicate the Confrontation Clause. The primary purpose of the callers' statements and of the questioning by the 911 operator was to address and resolve an ongoing emergency. At the time the 911 calls were initiated, gunshots had been fired, and the callers feared for their safety and the safety of others. The questions posed by the operator were necessary to evaluate the situation, locate the perpetrators and to dispatch the required assistance.

The 911 call discussed in *Collins* is similar to the issue here. In the present case, as in *Collins*, the caller provided information relating to an ongoing situation. The interview following the 911 call was intended to assist the police in the resolution of an ongoing emergency. In addition, Mr. Smith stated he was in fear. The record also reflects that the 911 call and subsequent statement were made within minutes of the events.

A review of the body-worn camera video depicts Leon Smith speaking with the NOPD officer from inside defendant's house. Mr. Smith tells the officer the victims just threw something through defendant's window. He immediately called 911 and was told the police were already on the scene. Mr. Smith informed the officer he knew defendant as well as the victims and he was there to keep the peace. He and defendant were sitting and drinking on the sofa when the object came through the window. He also claimed the injuries to the victims were months' old.

In finding the defendant guilty, the jury reasonably found that the victims' testimony concerning the incident was credible. Even if all or part of the video recorded statement of Mr. Smith were excluded, the other evidence provides a sufficient basis for the jury to have reached the same verdict.

**ASSIGNMENT OF ERROR NUMBER TWO**

Defendant contends the sentence imposed was excessive. The trial court sentenced defendant to six years' imprisonment at hard labor on each of the two counts of aggravated battery, all but eighteen months suspended with three years of probation. The sentences were ordered to run concurrently. Defendant objected to the sentences.

A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. *State v. Cann*, 471 So.2d 701, 703 (La.1985). "On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion." *State v. Walker*, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; *cf. State v. Phillips*, 02-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906; *see also State v.*

10

*Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672; *State v. Baxley*, 94-2982 (La. 5/22/95), 656 So.2d 973; *State v. Batiste*, 06-0875 (La. App. 4 Cir. 12/20/06), 947 So.2d 810; *State v. Landry*, 03-1671 (La. App. 4 Cir. 3/31/04), 871 So.2d 1235.

If the reviewing court finds adequate compliance with La. C.Cr. P. art. 894.1, it must then determine whether the sentence the trial court imposed is too severe in light of the particular defendant as well as "the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged." *Landry*, 03-1671, p. 8, 871 So.2d at 1239; *See also State v. Bonicard*, 98-0665 (La. App. 4 Cir. 8/4/99), 752 So.2d 184.

"[T]he penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society." *State v. McDonough*, 2022-0628, p. 45 (La. App. 4 Cir. 10/27/23), 376 So.3d 1003, 1032 (quoting *State v. Cassimere*, 2009-1075, p. 5 (La. App. 4 Cir. 3/17/10), 34 So.3d 954, 958). Here, the state and defendant submitted memoranda in support of their positions on sentencing. Defendant submitted letters she wrote and letters written by her supporters to the trial court. The trial court reviewed the items and made clear that it understood its duty to consider the statutory factors and the circumstances of the case. In pertinent part, La. R.S. 14:34 provides:

> A. Aggravated battery is a battery committed with a dangerous weapon.
> B. Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both. …

The trial court sentenced defendant to six years' imprisonment at hard labor with the Department of Corrections with all but 18 months suspended, with three years of active probation. The evidence presented at trial supported the trial court's assessment of the facts; the trial court considered the La. C.Cr.P. art. 894.1

factors, and found the attack upon the victims was unprovoked and was not an isolated incident. The trial court also noted defendant cut both victims which caused painful injuries. Evidence presented at trial suggested defendant has a history of violence and perhaps a substance abuse problem. The record supports the midrange sentences imposed. The trial court did not abuse its discretion in sentencing defendant. This assignment of error is without merit and the sentences are affirmed.

**CONCLUSION**

For the reasons stated above, the convictions and sentences are affirmed.

**AFFIRMED**