871 So.2d 1235 (2004)
STATE of Louisiana
v.
Koty J. LANDRY.
No. 2003-KA-1671.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 2004.
*1236 Charles C. Foti, Attorney General, Darryl W. Bubrig, Sr., District Attorney, Belle Chasse, LA and Gilbert V. Andry IV, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge MAX N. TOBIAS JR. and Judge Pro Tempore MOON LANDRIEU).
MOON LANDRIEU, Judge Pro Tempore.

STATEMENT OF CASE
A bill of information filed August 22, 2002 charged the defendant, Koty Landry, with second-degree battery. He entered a plea of not guilty on September 9, 2002. The defense motions were waived when discovery was satisfied. A jury of six found him guilty as charged on March 11, 2003. He was continued on bond and a pre-sentence investigation was ordered. On June 23, 2003, the defendant was sentenced to serve four years at hard labor, suspended, and he was placed on four years active probation and one year inactive probation. As conditions of his probation, the defendant was ordered to: (1) pay a $1,500.00 fine; (2) complete an alcohol abuse program; (3) pay restitution in the amount of $6,998.26; (4) pay the Indigent Defender Board $3,000.00; (5) complete an anger management program; and (6) serve thirty days in custody during the days that he is onshore from his employment. The court also issued a protective order prohibiting the defendant from having any contact with his victim for eighteen months. On that same day, the defense moved for an appeal that was granted.
For the following reasons, we affirm the defendant's conviction and sentence.

STATEMENT OF FACT
On the night of August 2, 2002, at the Deuce's Wild Lounge in Venice, Louisiana, Raymond Rojas ("Rojas") and other family members were celebrating the birthday of Rojas's sister Tammy. During the course of the evening, the defendant came to the table, and Rojas told him to leave. When Rojas left the bar, the defendant followed him to his truck. He punched Rojas in the face, causing Rojas to fall on the concrete. The defendant left the scene before the police arrived. An ambulance was called, but Rojas's wife drove him to the emergency room in Port Sulphur. He did not receive treatment there because he had been knocked unconscious and there was no CT scan. Rojas and his wife then went to University Hospital in New Orleans. He suffered a broken jaw, a fractured jaw, scrapes, and bruises. The next day he had teeth removed and his jaw was wired.
Birdie Rojas, the victim's wife, testified that she was on the passenger side of the truck and Rojas was almost in front of the truck, digging for his keys. She saw the defendant come out of the bar and hit her husband. They fell between the trucks. By the time she got around the truck, the defendant was kicking Rojas. Mr. Berlin ("Blackie") Moreau came over and pulled the defendant off Rojas. Although Rojas and the defendant passed a few words when the defendant came to the table, she stated that she did not anticipate a fight breaking out when they left.
*1237 Raymond Rojas, the victim, testified that he did not pick a fight with anyone that night and he did not expect anyone to attack him. When he was getting into the truck, he got hit. He does not remember what happened after that because he was knocked unconscious. He did not put up any kind of defense because he was attacked from behind and was knocked unconscious on the first hit. When he came to, the man who hit him had fled the scene. The police took a report and took pictures.
Rojas admitted having a few words with the defendant in the bar. When the defendant came to the table, Rojas told him to get away, that it was a private party. The defendant did not like it very much, but he went back to the bar. Whenever Rojas got up, the defendant would look at him, as if he was waiting for Rojas to leave. Rojas stated that he did not make any gestures at the defendant nor did he ask to take it outside.
Rojas stated that he suffered a broken jaw on one side and a fractured jaw on the other. A wisdom tooth was pulled before they could wire his jaw shut. For about eight weeks he was on a liquid diet. He also had a "busted eye." Rojas testified that he did not refuse medical treatment. He was checked out at the scene. He was told that he did not have any life threatening injuries, but he had to go to the hospital. His wife drove him because they could not afford an ambulance.
The defendant is related to Rojas; the defendant's mother is Rojas's cousin.
Bobby Jones, a friend of the defendant, testified that he observed an argument between Rojas and the defendant at the table that lasted a few minutes. Rojas flipped off the defendant, and the defendant got angry. The defendant stood there for a minute then stuck his hand out to shake hands, but Rojas would not take it. The defendant came to the bar and sat by Jones. When Rojas and his wife were leaving the bar, Rojas flipped off the defendant again, and they exchanged a few more words. The defendant followed Rojas out the door. Jones went outside about three seconds after the defendant. He saw Rojas lying on the concrete; the defendant was standing over him, and Birdie was screaming. Jones did not see the actual punch. He left before the police arrived on the scene. He did not see Rojas argue with anyone else.
Koty Landry testified on his own behalf. He stated that he was not familiar with Rojas prior to August 2, 2002 although they are distantly related on his mother's side of the family. Rojas's sister, Tammy Bourgeois, is an acquaintance. Landry walked over to the table and sat down by Tammy to wish her a happy birthday. Before he got a chance to do so, Rojas started hollering at him to get the "F" away from there. Landry got up and went back to the bar. He stated that he bumped into Rojas later at the bar, and they had words. He tried to shake Rojas's hand, but Rojas did not want any part of it. Landry testified that he told Rojas that he did not want to fight. Landry stated that he sat at the bar for about ten minutes after Rojas left. Landry was walking to his truck when Rojas saw him. Rojas rushed at Landry with his fists clenched, saying he was going to "F" him up. When Rojas got close enough, Landry punched him. When asked at trial if there was any place for him to go or if he could have turned around and left, Landry testified that he could have gone back inside or he could have tried to get into his truck. He testified that he punched Rojas because he felt threatened. Landry hit him one time, then Rojas hit the ground. His face probably hit the concrete. Landry saw that he was knocked out, and he walked back inside. Landry testified that no one had to *1238 pull him off and he did not kick Rojas while he was on the ground. Landry stated that he did not flee the scene; he got in his truck and left.
Landry had a prior conviction for possession of marijuana. He also had a D.W.I. Landry testified that on the night of the incident he had about twelve beers. He went outside because he wanted to leave, not because Rojas had been hollering at him. He hit Rojas from the front, not the back as Rojas testified. He did not remember having prior dealings with Rojas; he had no idea why Rojas wanted him to leave. Landry stated that Rojas did not have any reason to flip him off or to be angry with him.
The defendant was sentenced on June 23, 2003. The court had ordered a PSI. The defendant had no previous felony convictions; however, the court made note of: (1) March 1997, criminal trespass charge, dismissed; (2) August 1997, speeding ticket, paid and marijuana charge, refused; (3) November 1997, speeding, paid; (4) 1998, DWI, convicted and other traffic offenses, paid; (5) July 17, 2000, speeding, dismissed; (6) October 2000, speeding, dismissed; (7) August 3, 2002, instant offense. The court was concerned about the defendant's use of marijuana and alcohol. The court noted that every now and then the defendant seemed to get a little out of control.
The court was also concerned about the instant offense. The defendant struck his victim in a manner causing him to have fractures of his jaw, incurring $5,498.26 worth of medical expenses and another $1,500.00 in lost wages. The victim stated that he did not have medical coverage and apparently still owed for his medical bills. The court stated that law allowed it to recompense the victim for his actual economic loss. The court believed the defendant should work to repay the victim. The court was concerned about citizens causing this type of injury just because they do not like the way somebody talks to them. The court then decided to impose both incarceration and restitution. The court further noted that it was imposing the sentence under La.C.Cr.P. art. 893.

ERRORS PATENT
A review of the record revealed no errors patent.

ASSIGNMENT OF ERROR NUMBER 1
The defendant first complains the evidence was insufficient to support his conviction of second-degree battery, because the evidence failed to show that he had the requisite intent to commit serious bodily injury and that serious bodily injury resulted.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986); State v. Heck, 560 So.2d 611 (La.App. 4 Cir.1990). The reviewing court must consider the record as a whole and not just the evidence most favorable to the prosecution; if rational triers of fact could not disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991).
In a second-degree battery conviction, the State is required to prove the offender committed a battery without the consent of the victim and that he intentionally inflicted serious bodily injury. La. R.S. 14:34.1. In second-degree battery *1239 cases, the offense requires proof of a specific intent to inflict "serious bodily harm." State v. Welch, 615 So.2d 300, 302 (La. 1993), citing State v. Fuller, 414 So.2d 306 (La.1982). Serious bodily injury is defined as injury that involves unconsciousness, extreme physical pain, or protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death. La. R.S. 14:34.1. Specific intent is defined as that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Therefore, the elements of second-degree battery are: (1) the intentional use of force or violence upon the person of another, (2) without the consent of the victim, (3) when the offender has the specific intent to inflict serious bodily injury. State v. Legendre, 522 So.2d 1249, 1251 (La.App. 4 Cir.1988).
The term "extreme physical pain" as used in the statute refers to "a condition which most people of common intelligence can understand; it is considered subjective in nature and susceptible to interpretation." Id. at 1251, quoting State v. Thompson, 399 So.2d 1161, 1168 (La.1981).
In the instant case, viewing the evidence in the light most favorable to the prosecution, the jury heard that the defendant followed the victim out of the bar and to his car where he punched him causing him to fall onto the concrete. The victim was knocked unconscious. He suffered a broken jaw, a fractured jaw, scrapes, and bruises, and was on a liquid diet for eight weeks. Therefore, the evidence was sufficient to support the defendant's conviction.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 2
For his second assignment of error, the defendant complains his sentence is excessive.
La. Const. art. I, § 20 explicitly prohibit excessive sentences. State v. Baxley, 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Francis, 96-2389, pp. 6-7 (La. App. 4 Cir.4/15/98), 715 So.2d 457, 461. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley supra. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 676. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 10, 656 So.2d at 979.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185.
However, in State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 819 this court stated:

*1240 The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
On appellate review of sentence, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La. 1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes "punishment disproportionate to the offense." State v. Sepulvado, 367 So.2d 762, 767 (La.1979).
In sentencing the defendant, the trial court acknowledged that the defendant had no prior felony convictions, but had prior misdemeanor convictions. The court considered the crime in light of La.C.Cr.P. art. 894.1 and noted that the defendant had a history of getting "a little out of control." The court also was concerned about the defendant's involvement with marijuana, alcohol, and D.W.I.'s. The court further stated that it was concerned that the defendant did not show any sign of remorse and the court believed that the conduct was likely to recur. The court was particularly concerned about the victim receiving restitution for his economic losses, and thus, attempted to fashion a sentence particularly suited to this defendant and this case. The trial court has not abused its discretion in sentencing the defendant in the aforementioned manner.
This assignment of error has no merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.