STATE OF LOUISIANA     *     NO. 2024-KA-0691

VERSUS     *

    **COURT OF APPEAL**

KENNETH GOMILA     *

    **FOURTH CIRCUIT**

    *

    **STATE OF LOUISIANA**

* * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 21-03299, DIVISION "E"
Honorable Eric A. Bopp
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Paula A. Brown)

Daniel J. Dysart
Ashton Licciardi
Assistant District Attorney
ST. BERNARD PARISH DISTRICT
ATTORNEY'S OFFICE
1101 West St. Bernard Highway
Chalmette, Louisiana 70043


       COUNSEL FOR STATE OF LOUISIANA/APPELLEE


Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158


       COUNSEL FOR DEFENDANT/APPELLANT


           **JUNE 19, 2025**
           **AFFIRMED**

PAB
RLB
RML

This is a criminal appeal. Appellant, Kenneth Gomila ("Mr. Gomila"), was charged with attempted second-degree murder, aggravated criminal damage to property, and illegal use of weapons or dangerous instrumentalities. After a jury trial, Mr. Gomila was convicted of the responsive verdict of aggravated assault with a firearm, along with the other two charges. He now appeals his conviction of aggravated assault with a firearm and the sentence imposed upon him for this conviction, as well as the sentences for the other two convictions not on appeal. For the reasons set forth below, Mr. Gomila's conviction and sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

The incident forming the basis of this appeal occurred on June 20, 2021, which was Father's Day of that year. At that time, Mr. Gomila lived with his daughter, Jennifer Gomila ("Ms. Gomila"), her husband, Cade Cummins, Sr. ("Mr. Cummins"), and Mr. Gomila's four grandchildren—Christopher Dubois ("Christopher"), David Gomila ("David"), and two younger grandchildren—C.C. and S.C.[1]—at 2001 Corinne Drive in Chalmette, Louisiana ("the family home").

---

[1] The two younger grandchildren involved in this matter are minors; as such, we will protect their anonymity by referring to them by their initials. *See State in Interest of L.R.*, 21-0141, p. 1 (La. App. 4 Cir. 3/25/21), 314 So.3d 1139, 1141 n.1.

1

On the date in question, all of the residents of the family home, aside from Christopher, spent the day on Lake Pontchartrain celebrating Father's Day. Mr. Gomila became intoxicated and began to display inappropriate behavior in front of his grandchildren. Specifically, he touched his granddaughter inappropriately and stripped naked in front of the group. Because of Mr. Gomila's inappropriate behavior, Mr. Cummins and Ms. Gomila agreed that Mr. Gomila should not return to the family home. On the ride home, Mr. Gomila was told that upon arrival back to the family home, he needed to gather his belongings and would no longer be welcome there. When they arrived home, Mr. Gomila packed his things and left; however, he returned roughly an hour later. Mr. Gomila started kicking the door in an attempt to reenter the family home, but Mr. Cummins stopped him. The two engaged in a physical altercation, which resulted in Mr. Gomila ending up on the ground. Mr. Cummins then returned back inside the house. Shortly afterwards, Mr. Gomila retrieved a firearm and fired five gunshots towards the family home before fleeing the scene. At that time, the family home was occupied by Mr. Cummins, David, C.C. and S.C.

On August 18, 2021, the State of Louisiana (the "State") charged Mr. Gomila, via a bill of information, with three offenses: (1) attempted second degree murder in violation of La. R.S. 14:27 and La. R.S. 14:30.1; (2) aggravated criminal damage to property in violation of La. R.S. 14:55; and (3) illegal use of weapons or dangerous instrumentalities in violation of La. R.S. 14:94(A). Mr. Gomila pleaded not guilty to all three charges. This matter came for a jury trial on April 2, 2024 and April 3, 2024. The State presented six witnesses: (1) St. Bernard Parish Sheriff's Office Deputy Brandon Gaudet ("Deputy Gaudet"); (2) St. Bernard Parish Sheriff's Office Captain Ryan Melerine ("Captain Melerine"); (3) David;

(4) Ms. Gomila; (5) Mr. Cummins; and (6) St. Bernard Parish Sergeant Corey Beebe ("Sergeant Beebe"). The defense did not call any witnesses of their own. The pertinent testimony elicited at trial is set forth below.

*Deputy Gaudet*

Deputy Gaudet, the patrol officer on duty on June 20, 2021, testified that he was called to investigate a complaint regarding gunshots at the family home. When he arrived on the scene, Mr. Cummins along with his three children were present. Mr. Cummins relayed to Deputy Gaudet that he had been in an altercation with his father-in-law, Mr. Gomila. He explained that Mr. Gomila attempted to barge into his home, which resulted in him shoving Mr. Gomila out of the doorway, causing Mr. Gomila to fall onto the ground. Mr. Cummins then witnessed Mr. Gomila retrieve a firearm from his vehicle and fire three shots into the family home. Deputy Gaudet observed three bullet holes in the window to the left of the front door. Deputy Gaudet, along with other deputies, relocated to a nearby Best Western Hotel, where they found Mr. Gomila. After being advised of his Miranda rights, Mr. Gomila admitted to Deputy Gaudet that he had, indeed, fired the shots into the family home. Following, the deputies found the handgun used in the shooting in Mr. Gomila's truck, which was located in the hotel parking lot.

*Captain Melerine*

Captain Melerine was summoned to the crime scene on June 20, 2021. Upon arrival, he interviewed Mr. Cummins, who was at the family home with his three children. During his interview, Mr. Cummins again relayed that he and Mr. Gomila got into an altercation and during that altercation, he pushed Mr. Gomila outside of the home and onto the ground. Mr. Cummins then returned inside his home. Not

3

long afterwards, Mr. Cummins was standing near a window in the front portion of the house when Mr. Gomila fired shots into the family home. Mr. Cummins then showed Captain Melerine a video obtained from his Ring doorbell camera (the "Ring Video"). As part of his investigation, Captain Melerine later obtained a copy of the Ring Video. The video footage begins with Mr. Gomila getting up off the ground. A few seconds later, three gunshots can be heard, and then Mr. Gomila appears in the frame where he is seen firing the remaining two gunshots at the family home. He attempted to fire more shots, but the gun ran out of bullets. Captain Melerine testified that he sought to obtain additional Ring doorbell footage depicting the initial altercation between Mr. Cummins and Mr. Gomila, but there was none.

*David*

David is the son of Ms. Gomila and the stepson of Mr. Cummins. Mr. Gomila is David's maternal grandfather. David testified that on June 20, 2021, he, his mother, stepfather, grandfather and younger siblings, C.C. and S.C., went boating on Lake Pontchartrain to celebrate Father's Day. Before they left, he noticed that Mr. Gomila had been drinking and smelled of alcohol. On the ride to the lake, he sat between Mr. Gomila and S.C., who was holding a naked Barbie doll. David testified that Mr. Gomila reached over him, touched the doll's chest and then proceeded to touch S.C.'s chest. At the time, he did not react or say anything to his parents. However, once the family was out on the boat, Mr. Gomila stripped down naked in front of everyone. This action led David to tell his parents about the incident that had occurred on the ride to the lake.

On the drive home, Mr. Cummins told Mr. Gomila that when the family arrived back at the family home, he needed to gather his belongings and leave the

4

home. When they arrived home, David, C.C., S.C., and his mother relocated to his maternal grandmother's house, while Mr. Cummins and Mr. Gomila remained at the family home. After Mr. Gomila gathered his belongings and left the house, Ms. Gomila dropped David and his siblings off at the family home, while she and her mother went to the store. David, C.C., S.C., and Mr. Cummins were inside the house when Mr. Gomila returned. Mr. Cummins opened the door, told Mr. Gomila to leave, and as Mr. Cummins attempted to close the door, Mr. Gomila kicked the door and grabbed Mr. Cummins. David heard Mr. Gomila scream, leading him to run out the door to see Mr. Cummins standing over Mr. Gomila, who was on the ground. Mr. Cummins, again, told Mr. Gomila to leave, and he and David returned inside the house. David said that as he and Mr. Cummins were walking down the hallway, he heard what he believed to be fireworks, but once the window shattered, he realized it was gunshots and became terrified. David testified at no time did he see anything, including a weapon, in Mr. Cummins' hand during the sequence of events.

*Ms. Gomila*

Ms. Gomila testified that on the date of the incident, Mr. Gomila was very intoxicated and reeked of alcohol. Once the family was on the boat, Mr. Gomila started stumbling and falling, and he became very belligerent. She also recalled the moment when Mr. Gomila undressed on the boat. On the way back home, she told Mr. Gomila that he needed to leave when they got home. Ms. Gomila explained that, after spending the day on the boat, she and her children went to her mother's house, while Mr. Cummins and Mr. Gomila went to the family home so that Mr. Gomila could collect his belongings. Once Mr. Cummins notified her that Mr. Gomila had left, she dropped the kids off at home and she and her mother left

5

to go shopping. Ms. Gomila testified that as she was checking out at the store, she received alerts from her Ring doorbell that motion had been detected at the front door area of the family home. When she looked at the Ring app on her phone, she saw Mr. Cummins and Mr. Gomila fighting. Ms. Gomila stated that she saw her father kicking the front door and then saw Mr. Cummins pick him up, point what appeared to be a gun under his chin and throw him on the ground. Mr. Cummins then went back inside with the gun in his hand and shut the door.

When she arrived back at the family home, the police were already at the scene. Ms. Gomila did not provide any statements and did not inform the deputies that she had watched the altercation play out on her Ring app. Ms. Gomila described her now ex-husband, Mr. Cummins, as a violent man. It was because of this violence that she asked her father to live with them, thinking he may act as some form of a protector. However, she also admitted that her father was an aggressive man. In fact, she stated that both men were "aggressive, impulsive people, just volatile, impulsive, [with] unpredictable tempers." She further offered that her father had no reason to be back at the house that evening "unless it was to get even."

*Mr. Cummins*

Mr. Cummins testified that on the date in question, he, Ms. Gomila, their three children and Mr. Gomila traveled to a boat launch. He stated that once they arrived at the boat launch, Mr. Gomila was exhibiting clear signs of intoxication. In line with previous witnesses, he also recalled Mr. Gomila stripping naked in front of everyone that day. At some point during the day, he remarked to Ms. Gomila that her father had to be removed from the family home, to which she did not object. When they returned home, he told Mr. Gomila that he had fifteen

6

minutes to gather his belongings and exit the home. He instructed Mr. Gomila that if he needed anything else, he would need to return with a police escort. After Mr. Gomila left, Ms. Gomila brought the kids home, and she left for the store shortly thereafter.

Mr. Gomila returned to the family home about an hour later and began banging on the door. When Mr. Cummins cracked the door open to tell Mr. Gomila to leave, Mr. Gomila kicked the door in, grabbed Mr. Cummins by his shirt and pulled him outside. Mr. Cummins then grabbed Mr. Gomila and threw him to the ground. Mr. Cummins testified that while he owned firearms at the time of this incident, he did not have a firearm in his hand when he grabbed Mr. Gomila. He further testified that he never brandished a gun throughout the entire physical altercation with Mr. Gomila. After he had thrown Mr. Gomila to the ground, Mr. Cummins, along with David—who had come outside once the commotion began— went back inside the house.

Soon after, Mr. Cummins heard a popping sound and, immediately assuming it was gunshots, shouted to his children to get down and take cover. It was only at this point that he located a firearm in the event he needed to defend himself against Mr. Gomila. However, when Mr. Cummins opened the front door, he saw Mr. Gomila fleeing the scene in his truck. The Ring Video was once again played in the courtroom. Mr. Cummins explained that the Ring Video was the only video footage available. He stated that during the initial police investigation, he showed the deputies his phone and they watched the video footage. He affirmed that he did nothing to edit or alter the Ring Video in any way, nor did he delete any other existing videos. When Ms. Gomila arrived on the scene, she never told Mr.

7

Cummins or the deputies that she had seen a Ring doorbell video depicting the earlier altercation between him and Mr. Gomila.

*Sergeant Beebe*

Sergeant Beebe testified that on June 20, 2021, he responded to a 911 call reporting shots fired at the family home. During trial, Sergeant Beebe's body-worn camera footage was played for the jury. This footage depicts a deputy discussing—in the earshot of Ms. Gomila—Mr. Gomila's claim that Mr. Cummins put a gun in his mouth. When this statement was made, Ms. Gomila did not comment, but slightly shook her head negatively. Ms. Gomila never told investigators that she had seen any Ring app footage reflecting that Mr. Cummins had pulled a gun on Mr. Gomila or that Mr. Cummins ever put a gun under her father's chin or in his mouth. Sergeant Beebe also swore that besides the Ring Video, no other Ring doorbell footage was ever recovered.

On April 3, 2024, the jury returned with their verdict and found Mr. Gomila guilty as charged of aggravated criminal damage to property and illegal use of a dangerous instrumentality. Regarding the charge of attempted second degree murder, the jury found Mr. Gomila guilty of the responsive verdict of aggravated assault with a firearm. Mr. Gomila's sentencing hearing took place on August 19, 2024. The district court heard testimony from three people: (1) John Gomila, Mr. Gomila's brother; (2) Mr. Dubois; and (3) Mr. Gomila himself. After hearing this testimony, the district court sentenced Mr. Gomila as follows:

> [A]s it relates to count one for violation of [La. R.S.] 14:37.4, aggravated assault with a firearm, I'm going to sentence you to 10 years in the Department of Corrections. I'm going to give you credit for time served, and I'm going to run this concurrent with counts two and three.

As to count two for the violation of [La. R.S.] 14:55, aggravated criminal damage to property, I'm going to sentence you to 10 years in the Department of Corrections, give you credit for time served and run it concurrent with counts one and the sentence I'm getting ready to give you on count three.

As to count three, I'm going to -- in violation of [La. R.S.] 14:94(A)(F), I'm going to sentence you to 15 years in the Department of Corrections without benefit of parole, probation, or suspension of sentence, and I'm going to give you the credit for time served, and run it concurrent with counts one and two.

Counsel for Mr. Gomila made an oral motion for appeal, which was reduced to writing on August 22, 2024 and granted by the district court on the same date. This timely appeal followed.

## ERRORS PATENT

Appellate courts review criminal appeal records for the existence of a patent error. *See* La. C.Cr.P. art. 920(2).[2] A review on the face of the record for errors patent reveals none.

## DISCUSSION

Mr. Gomila raises three assignments of error:

1. The evidence as to Count One was insufficient as the State failed to negate self-defense and failed to prove the substantive offense;

2. The [district] court erred in admitting the Ring Video evidence where it was only in partial form, had been edited, and could not be authenticated; and

3. Under the circumstances of this offense or the offender, the district court erred in imposing unconstitutionally excessive, maximum sentences on a fifty[-]nine year old, first offender. Moreover, the sentence on Count Three exceeds the statutory sentence allowed for the crime alleged in the bill of information.

---

[2] Louisiana Code of Criminal Procedure art. 920(2) provides that the scope of appellate review includes: "An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."

9

Considering the second assignment of error is procedural in nature, we will begin our discussion there.

*Assignment of Error No. 2 – Ring Video*

In this assignment of error, Mr. Gomila contends that the district court erred in admitting the Ring Video into evidence because the recording was not properly authenticated, was incomplete in duration, and the State failed to prove what happened to the missing portion of the footage. Ultimately, Mr. Gomila alleges that the introduction of this footage prejudiced him and prevented a fair trial. The State argues that because Mr. Gomila stipulated to the Ring Video's authenticity at trial and the State laid a proper foundation that the footage is what it appeared to be, the Ring Video was properly introduced into evidence.

"Authentication is a condition precedent to admissibility." *State v. Groves*, 20-0450, p. 29 (La. App. 4 Cir. 6/10/21), 323 So.3d 957, 975 (citing La. C.E. art. 901(A)). According to the Louisiana Code of Evidence, authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." La. C.E. art. 901(A). "A district court has great discretion in deciding whether a party laid a sufficient foundation for the admission of evidence." *Groves*, 20-0450, p. 29, 323 So.3d at 975 (citing *State v. Ashford*, 03-1691, p. 14 (La. App. 4 Cir. 6/16/04), 878 So.2d 798, 806). "An appellate court reviews a district court's ruling on the admissibility of evidence under the abuse of discretion standard." *Id.* (citing *State v. Wright*, 11-0141, pp. 10-11 (La. 12/6/11), 79 So.3d 309, 316).

On December 6, 2022, Mr. Gomila filed a pre-trial motion challenging the authenticity of the Ring Video. The motion asserted that the Ring Video was only a partial video; that a full version of the Ring Video would show the prior

altercation between Mr. Cummins and Mr. Gomila, which would allegedly reflect that Mr. Cummins was the aggressor in the altercation; and, without the complete video, the partial video should not be admitted. This motion was set for hearing on January 24, 2023. However, on that date, the motion was continued because a witness was unavailable. The motion was subsequently continued several times for various reasons and was, as reflected by the record, never heard. We note that the attorney who filed the motion was not the same attorney representing Mr. Gomila at trial and the motion was not re-urged. Instead, when the State introduced the Ring Video into evidence, no objection was lodged. Quite the opposite, defense counsel stipulated to its authenticity. Specifically, the trial transcript reflects the following colloquy:

> MR. DYSART: All right. Your Honor, at this time, State would offer, file, and introduce as S-5 the Ring video doorbell that was obtained by [Captain] Melerine. I believe we have a stipulation as to authenticity.
>
> THE COURT: Is that correct?
>
> MS. MEYASKI: [That is] correct, Judge.
>
> THE COURT: Okay. So ordered.

It is well established that for appeal purposes, "argument is limited to those grounds raised at trial." *State in Interest of C.H.*, 21-0516, p. 18 (La. App. 4 Cir. 1/26/22), 335 So.3d 451, 462 (citing *State v. Magrini*, 19-0951, pp. 25-26 (La. App. 4 Cir. 5/27/20), 301 So.3d 525, 540). In a situation, as is here, in which a defendant initially raises an objection to evidence via a pre-trial motion, but later withdraws said objection or agrees to the admission of the evidence at trial, he has waived his prior objection and loses the right to present the issue on appeal. *See State v. Caraby*, unpub., 06-1376, p. 3 (La. App. 4 Cir. 3/21/07), 2007 WL 7711284. *See also State v. Lane*, 20-137, p. 34 (La. App. 5 Cir. 12/23/20), 309

11

So.3d 886, 910 (wherein the appellate court noted that "[w]hen a defendant unsuccessfully seeks to exclude certain evidence [in] a pre-trial motion, but at trial agrees to its introduction, he waives his prior objection and loses the right to present the issue on appeal"). Thus, we find that when Mr. Gomila stipulated to the authenticity objection to the Ring Video, he forfeited his right to present the issue on appeal. This assignment of error lacks merit.

*Assignment of Error No. 1 – Self-Defense and Sufficiency of Evidence*

In this assignment of error, Mr. Gomila asserts that not only did the State fail to provide sufficient evidence that he had not acted in self-defense when discharging his firearm at the family home, but also that the State presented insufficient evidence to support his conviction of aggravated assault with a firearm conviction. We will begin by outlining the law on sufficiency of evidence, and then address self-defense and aggravated assault with a firearm, respectively.

"Appellate courts review the sufficiency of evidence used to support a conviction under the *Jackson* standard." *State v. Riley*, 23-0040, p. 12 (La. App. 4 Cir. 8/31/23), 372 So.3d 77, 86 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979)). "Under *Jackson* 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789). "The principal [criterion] of a *Jackson* . . . review is rationality." *Id.* (quoting *State v. Dukes*, 19-0172, p. 7 (La. App. 4 Cir. 10/2/19), 281 So.3d 745, 752). "As such, 'irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.'"

*Id.* at pp. 12-13, 372 So.3d at 86 (quoting *State v. Alexis*, 14-0327, p. 6 (La. App. 4 Cir. 12/3/14), 157 So.3d 775, 778). "[W]here there is no direct evidence presented proving one or more of the elements of the offense, La. R.S. 15:438 governs circumstantial evidence and provides 'assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.'" *State v. Mealancon*, 21-0119, pp. 6-7 (La. App. 4 Cir. 12/22/21), 334 So.3d 792, 797 (quoting *State v. Hutsell*, 17-0112, p. 15 (La. App. 4 Cir. 4/18/18), 241 So.3d 542, 551). "Stated differently, the reviewer as a matter of law, can affirm the conviction only if the reasonable hypothesis is the one favorable to the [S]tate and there is no extant reasonable hypothesis of innocence." *Id.* at p. 7, 334 So.3d at 798 (internal quotations omitted) (quoting *State v. Green*, 449 So.2d 141, 144 (La. App. 4th Cir. 1984)). "This test is not separate from the *Jackson* standard; rather it simply requires that all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *Id.* (internal quotations omitted) (quoting *State v. Hoang*, 16-0479, p. 3 (La. App. 4 Cir. 12/21/16), 207 So.3d 473, 475). "If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis falls; and, unless another one creates reasonable doubt, the defendant is guilty." *Id.* (citing *State v. Captville*, 448 So.2d 676, 680 (La. 1984)). "Therefore, 'where the evidence is purely circumstantial, if it does not exclude every reasonable hypothesis of innocence, a rational juror cannot find defendant guilty beyond a reasonable doubt without violating constitutional due process safeguards.'" *Id.* (quoting *State v. Monds*, 91-0589 (La. App. 4 Cir. 2/10/94), 631 So.2d 536, 539). With these tenets in mind, we now apply them to Mr. Gomila's claims regarding self-defense.

"When a defendant asserts that he acted in self-defense in a homicide case, it is settled law that the [S]tate bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense." *State v. Lehmann*, 23-0386, p. 19 (La. App. 4 Cir. 2/5/24), 385 So.3d 268, 279 (quoting *State v. De Gruy*, 16-0891, p. 18 (La. App. 4 Cir. 4/5/17), 215 So.3d 723, 733). Louisiana Revised Statutes 14:18 provides, in part, that "[t]he fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct." Further, "use of force or violence upon the person of another is justifiable . . . [w]hen committed for the purpose of preventing a forcible offense against the person . . . provided that the force or violence used must be reasonable and apparently necessary to prevent such offense." La. R.S. 14:19(A)(1)(a). "A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." La. R.S. 14:21. In keeping with this statute, this Court has explicitly provided that "the justification defense may not apply to a defendant who acts as the aggressor and provokes the situation." *State v. Wright*, 24-0349, p. 3 (La. App. 4 Cir. 3/19/25), ___ So.3d ___, ___, 2025 WL 854665, at *7 (citing *State v. Bethley*, 22-0849, p. 6 (La. App. 4 Cir. 6/21/23), 368 So.3d 1148, 1154).

Mr. Gomila argues that Mr. Cummins was the aggressor in this altercation because Mr. Cummins threatened him with a gun and threw him to the ground after his unwelcomed reappearance at the family home. We disagree. Our review of the evidence shows that after Mr. Gomila was thrown to the ground, Mr. Cummins retreated into his home and locked the door. We find that at that time, the

14

altercation, wherein Mr. Cummins could have been considered the aggressor, ceased, and Mr. Cummins was no longer—if he ever was—an aggressor. Moreover, review of the Ring Video shows that Mr. Gomila then picked himself up off of the ground and walked out of the view of the camera. While the footage does not show definitively whether Mr. Gomila went to his truck, he went somewhere and obtained a firearm. The Ring audio then records the sound of three gunshots followed by Mr. Gomila coming into frame and firing two more gunshots into the family home. In this new interaction, it is unquestioned that Mr. Gomila takes on the role of the aggressor. He is not being provoked, nor is there any apparent threat against him. He merely appears, in the words of his daughter's testimony, to be "get[ting] even." Thus, we find that the State met its burden of proving beyond a reasonable doubt that Mr. Gomila was not acting in self-defense and that, in viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that Mr. Gomila's conduct was not justified.

We now turn to Mr. Gomila's argument relating to his conviction. He was charged with attempted second-degree murder in violation of La. R.S. 14:27[3] and La. R.S. 14:30.1,[4] but was convicted of the responsive verdict[5] of aggravated assault with a firearm, which La. R.S. 14:37.4(A) defines as "an assault committed

---

[3] Louisiana Revised Statutes 14:27(A) describes the act of an attempt as: "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose."

[4] Second-degree murder is defined as the killing of a human being "[w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. R.S. 14:30.1.

[5] There are five responsive verdicts for attempted second-degree murder: (1) guilty; (2) guilty of attempted manslaughter; (3) guilty of aggravated battery; (4) guilty of aggravated assault with a firearm; and (5) not guilty. La. C.Cr.P. art. 814(A)(4).

with a firearm." Appellate courts "will not reverse a jury's return of a responsive verdict, whether or not supported by the evidence, as long as the evidence is sufficient to support a conviction for the charged offense." *State v. Ward*, 23-0524, p. 6 (La. App. 4 Cir. 4/17/25), ___ So.3d ___, ___, 2025 WL 1135095, *3 (quoting *State v. Harris*, 02-1589, p. 4 (La. 5/20/03), 846 So.2d 709, 712-13).

In the matter before us, there is no question of the use of a firearm, so we turn our consideration to whether or not Mr. Gomila committed an assault. An assault is "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. 14:36. A battery is defined as "the intentional use of force or violence upon the person of another." La. R.S. 14:33. This Court has consistently held that "[i]n order to support a conviction for assault, the State must prove beyond a reasonable doubt: (1) the intent-to-scare mental element (general intent); (2) conduct by defendant of the sort to arouse a reasonable apprehension of bodily harm; and (3) the resulting apprehension on the part of the victim." *State v. Boner*, 19-0658, p. 10 (La. App. 4 Cir. 6/24/20), 302 So.3d 131, 138 (quoting *State v. Brown*, 17-0124, p. 6 (La. App. 4 Cir. 12/12/17), 234 So.3d 978, 982, *writ denied*, 18-0010 (La. 6/15/18), 257 So.3d 678). "Assault requires proof of only general criminal intent or a showing that the [d]efendant, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." *Id.* at p. 11, 302 So.3d at 138 (quoting *Brown*, 17-0124, p. 6, 234 So.3d at 982). "An offender has the requisite intent when the prohibited result may have reasonably been expected to follow from the offender's voluntary act, regardless of any subjective desire on his part to have accomplished the result." *Id.*

16

The Ring Video and the trial testimony all support the required elements of this crime. As previously discussed, the initial confrontation upon Mr. Gomila's reappearance at the family home had completely dissipated at the time that he decided to retrieve a gun and then further decided to fire that gun into a home containing his son-in-law and three grandchildren. As provided by the cited law above, Mr. Gomila's subjective desire is irrelevant considering the fear and trauma inflicted upon the four individuals in the family home, specifically Mr. Cummins at whom Mr. Gomila's anger and frustration was directed, that resulted from Mr. Gomila's actions. Based on the evidence adduced at trial, it is clear that Mr. Gomila possessed the general intent to scare Mr. Cummins by firing shots into the family home.

With regard to the actual conduct of Mr. Gomila, we must note that, in his brief to this Court, he categorized his actions as having fired shots into the air. We find this to be a gross mischaracterization of what occurred. The phraseology of firing shots into the air indicates to this Court an individual who is pointing a weapon up into the air and arguably not aiming at anything or trying to hit a specific target. The evidence presented to the jury was anything but that. Not only was the jury presented with photographs of the bullet holes in the first story window just to the left of the front door, the Ring Video clearly reflects Mr. Gomila holding the firearm directly in front of him with outstretched arms as he gets closer and closer to the window. There is no question that he was intentionally shooting into the home and not into the air as he suggests. Further, it is equally clear that the act of shooting into the window of someone's home, with the unquestionable knowledge that the home is occupied, is conduct that would lead someone to experience a reasonable apprehension of bodily harm. Especially

17

considering the interaction that had recently occurred, it is reasonable to expect that Mr. Cummins would be fearful of bodily harm.

Moving on to the final element—that Mr. Cummins need have actually experienced apprehension—we find there to be acceptable evidence supporting this notion. Similar to the questionable reference to Mr. Gomila shooting into the air, his brief to this Court also contends that Mr. Cummins never experienced this apprehension because he did not know these were gunshots until after the fact, instead thinking them to be fireworks. This is an inaccurate retelling of the trial testimony. The only individual who provided testimony regarding fireworks was David, who stated that he initially thought the sound was fireworks, but quickly realized it was gunshots and become fearful. Mr. Cummins, however, was under no such illusion. He provided that, upon hearing the sound, he immediately assumed it was gunshots and shouted to his children to get down and take cover. This instantaneous reaction to the sound and his concern for his children heavily lean towards a finding that he experienced actual apprehension as a result of Mr. Gomila's actions. Accordingly, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that Mr. Gomila committed aggravated assault with a firearm.

*Assignment of Error No. 3 – Excessiveness of Sentences*

In his final assignment of error, Mr. Gomila contends that the district court erred in imposing excessive sentences in connection with his three convictions. He specifically claims that the district court erred in failing to adequately consider the sentencing criteria set forth in La. C.Cr.P. art. 894.1.[6]

---

[6] Louisiana Code of Criminal Procedure article 894.1 provides the district court with non-controlling factors to consider when determining a defendant's sentence.

Louisiana Code of Criminal Procedure art. 881.1 provides, in pertinent part, as follows:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> B. The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.
>
> *          *          *
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

As this court recently noted in *State v. Fruge*, "[a] simple objection to the sentence is sufficient to preserve appellate review on the grounds of excessiveness." 23-0552, p. 21 (La. App. 4 Cir. 4/11/25), ___ So.3d ___, ___, 2025 WL 1088089, at *11 (quoting *State v. Mitchell*, 21-0488, p. 4 (La. App. 4 Cir. 12/15/21), 334 So.3d 449, 452). "However, '[w]here a defendant merely objects to the excessiveness of the sentence without stating the specific grounds for his objection, he is limited to a bare review of the sentence for constitutional excessiveness.'" *Id.* (quoting *State v. Barnes*, 01-489, p. 3 (La. App. 5 Cir. 10/17/01), 800 So.2d 973, 976).

In the matter *sub judice*, there is nothing in the record providing that Mr. Gomila filed a motion to reconsider sentence. Further, there was no basis for the objection lodged at the sentencing hearing. In fact, the transcript does not actually reflect any objection or statement from Mr. Gomila's counsel, only that the district court stated "I'll note your objection." Thus, as in *Fruge*, we will not consider the sentencing criteria in La.C.Cr.P. art. 894.1 because we are limited to a bare review

19

based on constitutional excessiveness as a result of the objection, or lack thereof, made at the sentencing hearing and his failure to file a motion reconsider sentence pursuant to La. C.Cr.P. 881.1.

Under "[b]oth the Eighth Amendment of the United States Constitution and Article I, § 20 of the Louisiana Constitution," the imposition of excessive and cruel punishments is prohibited. *State v. Wilson*, 14-1267, p. 23 (La. App. 4 Cir. 4/29/15), 165 So.3d 1150, 1165. "The excessiveness of a sentence is a question of law; a reviewing court will not set aside a sentence as excessive absent a manifest abuse of discretion by the sentencing judge." *State v. Toney*, 23-0591, p. 8 (La. App. 4 Cir. 4/17/24), 390 So.3d 812, 819, *writ denied*, 24-00549 (La. 11/6/24), 395 So.3d 872 (citation omitted). When reviewing sentences, this Court has held that "'the relevant question is not whether another sentence might have been more appropriate but whether the [district] court abused its broad sentencing discretion.'" *Id.* at p. 9, 390 So.3d at 812 (quoting *State v. Boudreaux*, 11-1345, p. 5 (La. App. 4 Cir. 7/25/12), 98 So.3d 881, 885).

"Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment." *State v. Cassimere*, 09-1075, p. 5 (La. App. 4 Cir. 3/17/10), 34 So.3d 954, 957-58 (quoting *State v. Landry*, 03-1671, p. 7 (La. App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239). "However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society." *Id.* at p. 5, 34 So.3d at 958 (quoting *Landry*, 03-1671, p. 8, 871 So.2d at 1239). "A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime." *Id.* "A sentence is

grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice." *Id.*

As mentioned previously in this opinion, three pieces of testimony were offered at Mr. Gomila's sentencing hearing. Mr. Gomila's brother, John Gomila, testified that Mr. Gomila was a good man and would never hurt anybody. However, he provided that Mr. Gomila needed help as a result of his alcoholism. Christopher, Mr. Gomila's oldest grandchild, testified that Mr. Gomila was one of his strongest male role models and would never want to hurt anyone. Similar to the previous testimony, Christopher provided that, rather than going to prison, he believed Mr. Gomila would benefit from going to rehabilitation to help his battle with alcoholism. Lastly, Mr. Gomila testified on his own behalf. He attributed his extreme intoxication on the date of the shooting at the family home to an issue with his medication. He further shifted responsibility for his intoxication to Mr. Cummins when he stated that he tried to "drown [his] depression in alcohol because of sometimes not being able to deal with certain attributes of [Mr.] Cummins' violence." Finally, he claimed that he was merely trying to get into the family home to retrieve some medications. Notably, the sentencing hearing transcript does not reflect any attempt by Mr. Gomila to take any responsibility for his own actions or issue any apologies.

After hearing the testimony, the district court proceeded to sentence Mr. Gomila as follows: (1) ten years for aggravated assault with a firearm with credit for time served, to run concurrent with his other two sentences; (2) ten years for aggravated criminal damage to property with credit for time served, to run concurrent with his other two sentences; and (3) fifteen years without benefit of parole, probation, or suspension for illegal use of weapons or dangerous

21

instrumentalities, with credit for time served, and to run concurrent with his other two sentences.  In doing so, the district court explained:

> I [have] gone through the sentencing guidelines. I take into consideration all the factors, both mitigating circumstances, and I do recall seeing the video. I do recall the fact that there were grandchildren inside the house and certainly two with the knowledge of Mr. Gomila along with his son-in-law. And I got to witness the incident where Mr. Cade Cummins had retreated from the incident, which then provided an opportunity for Mr. Gomila to go to his vehicle as he just noted in his statement to pull out a weapon and start firing it.
> So I [have] got to tell you, we [are] fortunate that no one got hit. We [are] fortunate that we [are] not sitting here looking at a murder charge.

We now turn to a review of the sentencing for each of Mr. Gomila's convictions.

*Count One – Aggravated Assault with a Firearm*

Louisiana Revised Statutes 14:37.4(C) provides that "[w]hoever commits an aggravated assault with a firearm shall be fined not more than ten thousand dollars or imprisoned for not more than ten years, with or without hard labor, or both." We begin by noting that Mr. Gomila's sentence for count one does not exceed the statutory limitation, and he was not given a sentence including a fine as allowed by the applicable statute.   Nonetheless, we still consider whether the sentence is excessive in light of the harm done to society and the sense of justice surrounding this matter.

In support of his excessiveness argument, Mr. Gomila cites *State v. Lafleur*, 16-467 (La. App. 3 Cir. 1/14/17), 209 So.3d 927, a case in which the appellate court found a ten-year sentence imposed for the defendant's conviction of one count of aggravated assault with a firearm excessive.  *Lafleur*, however, is distinguishable from the matter at hand.  In *Lafleur*, the defendant never fired his weapon; he simply pointed his weapon at the victim and then walked away. In the

matter *sub judice*, as discussed *ad nauseum*, Mr. Gomila shot five bullets at the family home, with three of those bullets entering the front window while Mr. Cummins and his three children were present inside the home. Mr Gomila also relies on *State v. Fomond*, 05-540 (La. App. 3 Cir. 1/18/06), 921 So.2d 1103, a case in which the defendant pled guilty to two counts of aggravated assault with a firearm and was sentenced to four years on each count, with his sentences to run concurrently. Based on this case, Mr. Gomila claims that he should not have received sentences any greater than four years. Again, the facts in *Fomond* are distinguishable from the facts herein in two major ways. First, at the time *Fomond* was decided, the maximum sentence authorized for aggravated assault with a firearm was five years imprisonment. *See Fomond*, 05-540, p. 1, 921 So.2d at 1104 ("[F]ive years is the maximum sentence provided for by La. R.S. 14:37.4, aggravated assault with a firearm."). Second, the *Fomond* defendant pled guilty to the charges. The district court specifically noted that it considered the defendant's "apologetic approach" in deciding the sentence. *Id.* at p. 3, 921 So.2d at 1105. As discussed, not only did Mr. Gomila plead not guilty, but his testimony at the sentencing hearing provided no sense of remorse for his actions. *See State v. McDonough*, 22-0628, p. 49 (La. App. 4 Cir. 10/27/23), 376 So.3d 1003, 1034, *writ denied*, 23-01546 (La. 9/4/24), 391 So.3d 1048 (where this Court noted that "lack of remorse [from the defendant] is another factor that can be considered by the district court [during sentencing]").

We also look to the case of *State v. Brown*, wherein the defendant was sentenced to five years in prison along with a statutory fine of $10,000.00, pursuant to La. R.S. 14:37.4, aggravated assault with a firearm. 17-0124, p. 9 (La. App. 4 Cir. 12/12/17), 234 So.3d 978, 984, *writ denied*, 18-0010 (La. 6/15/18), 257

So.3d 678. In finding the sentence not excessive, this Court noted that the district court cited "the defendant's failure to accept responsibility for his actions, the violent and senseless nature of the crime and the use of a dangerous weapon in the commission of the crime." *Id.* However, in *Brown*, unlike the current matter, the defendant never fired his weapon—only threatening to shoot the victim. In the matter *sub judice*, Mr. Gomila actually fired his weapon, several times, with the potential of hitting four victims located inside the family home. Further, while the *Brown* defendant only received a five-year prison sentence, he was given the full statutory fine as a further penalty. Thus, in considering the differences in the cases cited by Mr. Gomila, as well as the sentencing in *Brown*, we do not find the instant sentence for aggravated assault with a firearm to be excessive.

*Count Two – Aggravated Criminal Damage to Property*

Louisiana Revised Statutes 14:55(B) provides that "[w]hoever commits the crime of aggravated criminal damage to property shall be fined not more than ten thousand dollars, imprisoned with or without hard labor for not less than one nor more than fifteen years, or both." For count two, Mr. Gomila was sentenced to less than the statutory maximum without a fine.

In *State v. Bradstreet*, the appellate court affirmed the defendant's fifteen-year penalty without fine for aggravated criminal damage to property. 16-80 (La. App. 5 Cir. 6/30/16), 196 So.3d 876, *writ denied*, 16-1567 (La. 6/5/17), 220 So.3d 752. In *Bradstreet*, an unoccupied vehicle parked in a driveway near the scene of a crime sustained multiple bullet holes after the defendant discharged a total of twenty-nine bullets from three separate weapons. While the defendant appealed as excessive his sentences for second-degree murder, he also appealed his fifteen-year sentence for aggravated criminal damage to property. The appellate court found

that the district court did not abuse its discretion in imposing a fifteen-year, no fine sentence for this action.

In considering the *Bradstreet* case, we note the emphasis that the district court in the instant matter placed on the possibility that there could very easily have been a physical injury or fatality as a result of Mr. Gomila's actions. In considering the seriousness of the facts surrounding this matter, as well as contemplating the reality that Mr. Gomila did not receive the maximum sentence for count two, we find that the district court did not err in issuing a ten-year sentence.

*Count Three – Illegal Use of Weapons or Dangerous Instrumentalities*

Louisiana Revised Statutes 14:94(A) provides that "[i]llegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being. As it relates to sentencing, La. R.S. 14:94(B) provides, that "whoever commits the crime of illegal use of weapons or dangerous instrumentalities shall be fined not more than one thousand dollars, or imprisoned with or without hard labor for not more than two years, or both." However, La. R.S. 14:94(F) provides that "[w]hoever commits the crime of illegal use of weapons or dangerous instrumentalities by discharging a firearm while committing . . . a crime of violence . . . shall be imprisoned at hard labor for not less [than] ten years nor more than twenty years, without benefit of parole, probation, or suspension of sentence."

As a preliminary matter, Mr. Gomila contends that the following language in the bill of information was misleading, causing him to believe he was only subject

to the sentencing restrictions of La. R.S. 14:94(B): "[Mr.] Gomila, on or about June 20, 2021, did intentionally or with criminal negligence, discharge any firearm, or throw, place, or use any article, liquid or substance, where it is foreseeable that it may result in death or great bodily harm to a human being." However, we find two pieces of information in the record which negate this argument. First, in its instructions to the jury, the district court provided the charges against Mr. Gomila including, in pertinent part, "violating [La. R.S] 14:94(A) (F), illegal use of weapons or dangerous instrumentalities." Mr. Gomila did not object to this reading of the charges. Second, as it pertains to the bill of information, Mr. Gomila is correct in the language included therein. However, the Louisiana Supreme Court has noted that "[a] defendant must raise a claim that the indictment does not provide adequate notice of the charge before trial by filing a bill of particulars. Failure to do so waives the claim." *State v. Allen*, 01-2494, p. 1 (La. 6/21/02), 824 So.2d 344 (citing *State v. Gainey*, 376 So.2d 1240, 1243 (La. 1979)). Mr. Gomila did not file a bill of particulars prior to trial commencing, and thus waives his claim of inadequate notice. Additionally, as the Supreme Court further observed in *Allen*, the defendant could not "show prejudice from the alleged defect . . . because his alibi defense applied equally well to violations of [La.] R.S. 14:94(A) and (F)." *Id.* Similarly, Mr. Gomila's self-defense argument applied equally well to violations of La. R.S. 14:94(A) and (F) such that he can show no prejudice. As was the case in *Allen*, Mr. Gomila's "heightened sentencing exposure as a matter of [La.] R.S. 14:94(F) stems not from any failure of the indictment to provide adequate notice of the crime charged but from the exercise of the [S]tate's plenary charging discretion in prosecuting the more serious crime defined by the statute because it occurred during the commission of a crime of

violence." *Id.* at pp. 1-2, 824 So.2d at 344. Indeed, Mr. Gomila was billed in the charging document with attempted second-degree murder—which is a crime of violence—and the lesser included offense, aggravated assault with a firearm, is also defined as a crime of violence under Louisiana law. *See* La. R.S. 14:2(B)(33). We find no prejudice against Mr. Gomila related to the alleged defect. Having reached this conclusion, we now turn to discussion of whether his sentence for count three was excessive.

Mr. Gomila was sentenced to fifteen years on count three, which is a mid-range sentence under La. R.S. 14:94(F). In *State v. Ancalade,* this Court upheld a fifteen-year sentence imposed following the defendant's conviction of illegally discharging a firearm during a violent crime. 14-0739 (La. App. 4 Cir 1/14/15), 158 So.3d 891, *writ denied*, 15-0375 (La. 1/8/16), 184 So.3d 691. While the defendant conceded that he received a mid-range sentence, he asserted "that because 'this alleged crime [was] between family members' and 'no one was hurt' or 'property damaged,' any sentence in excess of the statutory minimum was excessive." *Id.* at p. 15, 158 So.3d at 899. This Court, however, found that "[t]he [district] court did not abuse its discretion in handing down the less than maximum sentence allowed by law" because "the record clearly shows that [the defendant] fired multiple shots in the direction of a group of people, including children." *Id.* Similarly, Mr. Gomila fired multiple shots in the direction of the home in which Mr. Cummins, along with Mr. Gomila's grandchildren, were located. Accordingly, we do not find his sentence of fifteen years without benefit of parole, probation, or suspension of sentence to be excessive.

Having discussed each of Mr. Gomila's convictions and corresponding sentences, and determining none to be constitutionally excessive, we find this assignment of error lacks merit.

## DECREE

For the foregoing reasons, we affirm Mr. Gomila's conviction and sentences, and find that the Ring Video was properly introduced into evidence.

**AFFIRMED**